[Cite as *State v. Smith*, 2018-Ohio-4615.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170335 |
| | | TRIAL NO. B-160893 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MICHAEL SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 16, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Demetra Stamatakos*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1}     Defendant-appellant Michael Smith was indicted on two counts of rape, in violation of R.C. 2907.31(A)(2), three counts of gross sexual imposition, in violation of R.C. 2907.02(A)(4), and one count of disseminating matter harmful to a juvenile, in violation of R.C. 2907.21(A)(1).  Smith was originally tried on the charges contained in the indictment in late January 2017.  The case was presented to a jury, but the jurors were unable to reach a verdict.  The trial court declared a mistrial, and the matter proceeded to a second jury trial before a visiting judge.  At the conclusion of the second trial, Smith was found guilty of three counts of gross sexual imposition and one count of disseminating matter harmful to a juvenile, and was sentenced accordingly.

{¶2}     In five assignments of error, Smith claims that he was improperly convicted.  We affirm.

### Granddaughter Claims Molestation

{¶3}     V.M. was Smith's daughter.  She testified that Smith had molested her over the course of several years in the 1980s.  She said that he had shown her photographs of her mother naked, as well as pornographic material.  One instance was witnessed by V.M.'s sister, L.S.  L.S. testified that she had seen Smith fondle V.M.'s breasts and vagina.  When V.M. told her mother about the incident, Smith was arrested and charged with two counts of sexual battery.  The matter proceeded to trial in 1986, and Smith was acquitted of both charges.

{¶4}     Over 19 years later, Smith was involved in another incident involving a minor, female relative.  R.E. was the ten-year-old daughter of M.S., V.M.'s niece, and Smith's granddaughter.  M.S. allowed R.E. to spend the night at Smith's home with the understanding that Smith would be taking her to see a movie.  R.E. testified

that, during the evening of that visit, Smith rubbed oil on her buttocks, breasts, and vagina under the guise of applying it to her skin to help with itching. She testified that Smith also licked her breasts and vagina, and that he showed her a pornographic movie. She further testified that Smith later rubbed her vagina again as she was falling asleep. R.E. testified that the next morning, Smith put her hand on his penis, pushed his penis against her buttocks, and then tried to pull down her underwear. Later that day, R.E. told her mother what had happened.

{¶5} R.E.'s mother testified that she had been estranged from Smith for many years, but had been trying to reconnect with him. She recounted that her sister had told her that Smith had molested her, but she did not believe that it had occurred. She testified that she noticed that R.E. was acting strangely after having been to Smith's home. She said that Smith was also acting strangely. R.E.'s mother then testified that R.E. told her what she claimed Smith had done. R.E.'s mother called Smith and asked him about what R.E. had told her. In the call, which R.E.'s mother recorded, Smith insisted that, if anything had happened, it was accidental.

{¶6} Smith testified that while he had rubbed oil on R.E.'s body, he had not done so with a sexual motivation. He also denied showing R.E. a pornographic movie, claiming that he accidently played a sex scene from an R-rated movie while trying to play a children's program.

{¶7} Cincinnati Police Detective Sharon Johnson testified about her investigation of the incident. She testified that, during the course of her investigation, she made reference to reviewing an "old office file," which was presumably the police file from the 1986 investigation involving V.M. and Smith. At trial, after the parties had rested their cases, but before closing argument, defense counsel raised the issue that the 1986 police file had not been turned over during

discovery, but did not seek a sanction for this omission. Counsel "just wanted to place it on the record."

### Testimony About Prior Conduct

{¶8} In his first assignment of error, Smith argues that the trial court erred when it allowed testimony relating to his alleged conduct that had been the subject of his 1986 prosecution for sexual battery—a prosecution that had resulted in his acquittal.

{¶9} Generally, evidence of other crimes, wrongdoing, or acts is not admissible to prove that an individual acted in conformity with that past conduct. Evid.R. 404(B). But the rule provides certain exceptions for when such evidence is admitted to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* The admission of other-acts evidence under Evid.R. 404(B) rests within the broad discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. We review the trial court's decision under an abuse-of-discretion standard. *Id.*

{¶10} The Ohio Supreme Court has set forth a three-part test to determine when a trial court may allow testimony about the actions of a defendant in a prior incident involving a different victim. *State v. Smith*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. When making that decision, the court must consider: (1) whether the other-acts evidence is relevant to making a finding that is of consequence more or less probable than it would have been without the evidence; (2) whether the evidence is presented to prove the character of the accused in order to show action in conformity therewith or whether it was presented for a legitimate

purpose; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at ¶ 20.

{¶11} As to the first step, we conclude that the evidence was relevant. The evidence from the witnesses tended to show the motive Smith had, and the preparation and plan he exhibited when targeting young, female family members under his care. In both instances, Smith had waited until the children were isolated, showed them pornographic images, rubbed their bodies with his hand first, and progressed to involving his genitals in the abuse. This evidence was also relevant to counter his assertion that any inappropriate touching had been accidental, and had not been motivated by a desire for sexual gratification.

{¶12} We next conclude that the evidence was properly admitted under the exceptions to Evid.R. 404(B). The evidence was admitted to show motive, intent, and absence of a mistake. The trial court repeatedly warned the jury that it was to consider the evidence only for that limited purpose and that it could not consider the evidence as improper character evidence. A jury is presumed to follow the instructions given it by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).

{¶13} Finally, we conclude that the probative value of the evidence was not substantially outweighed by unfair prejudice to Smith. The trial court's repeated instructions on the limited use of the evidence guarded against the danger of undue prejudice. *See Smith*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 24. The effect of the testimony presented by V.M. and L.S. was not so unfairly prejudicial that the trial court abused its discretion when admitting it.

{¶14} Smith also argues that the state should have been estopped from presenting this evidence because he had been acquitted of the charges associated

with that conduct. But this court has held that "collateral estoppel does not bar the state's use of other acts evidence pursuant to Evid.R. 404(B), when the evidence relates to alleged criminal conduct of which the accused has previously been acquitted." *In re Burton*, 160 Ohio App.3d 750, 2015-Ohio-2210, 828 N.E.2d 719, ¶ 14 (1st Dist.). This is because "the relevance of evidence offered under Rule 404(B) [is] governed by a lower standard of proof than that required for a conviction." *United States v. Felix*, 503 U.S. 378, 386, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

{¶15} As the Ohio Supreme Court stated, Evid.R. 404(B) precludes the admission of

> evidence of crimes, wrongs, or acts offered to prove the character of an
> accused in order to demonstrate conforming conduct, and it affords
> the trial court discretion to admit evidence of other crimes, wrongs, or
> acts for "other purposes," including, but not limited to, those set forth
> in the rule. Hence, the rule affords broad discretion to the trial judge
> regarding the admission of other acts evidence.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. In this case, the trial court did not abuse its discretion when it allowed the testimony of V.M. and L.S. relating to Smith's prior conduct. We overrule Smith's first assignment of error.

### Discovery of 1986 Police File

{¶16} In his second assignment of error, Smith claims that the trial court erred when it failed to order the state to turn over a copy of the police report from the 1986 incidents that made up the testimony of V.M. and S.L. We disagree.

{¶17} During the course of the trial, Detective Johnson testified that she had found a copy of the 1986 file while investigating the allegations involving R.E. After

6

the proceedings had concluded that day, counsel for Smith "informally requested" a copy of the file by text message. Nothing more came of the matter until counsel met with the trial court in chambers to discuss closing arguments, after both parties had rested. The following exchange took place:

> **Defense Counsel:** As was discussed preliminarily, and [to] place [it] on the record now, Detective Johnson testified yesterday with regards to her investigation and then in testifying, she made reference to examining [an] "old office file" on the case that [lead] to the charge from 1986 [case].
>
> That material was not provided to defense counsel. I don't know what the matter - - that the evidence - - that that file was actually presented to the Prosecutor on this case as well.
>
> But in any case, it wasn't presented to us. We made efforts to obtain various documents from the case in 1986[:] transcript, police reports, clerk's records, things of that nature[. W]e were very limited in our ability to get those materials, and certainly we did not, [to] reiterate, did not get anything that we believe was in the office file that Detective Johnson referenced. Thank you.
>
> **The Court:** You are not asking for a remedy? I didn't hear a request for a remedy?
>
> **Defense Counsel:** We are not asking for a remedy at this time. Just wanted to place it on the record.

{¶18} In this case, Smith has not established that the state was aware of the 1986 police file, has not established that he was entitled to its contents as part of the normal discovery process, did not involve the trial court in seeking to obtain a copy

of the police report, and sought no remedy from the trial court in light of his failure to obtain the report. While Smith characterizes the above colloquy as a "second request for the police file," nothing in that exchange can be read as a request for the file, and Smith requested no remedy for the state's alleged failure to disclose it. We overrule Smith's second assignment of error.

### Prosecutorial Misconduct

{¶19} In his third assignment of error, Smith claims that his convictions should be reversed because of misconduct by the prosecuting attorney. Generally, prosecutorial misconduct will not provide a basis for overturning a conviction unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 257. The test for whether prosecutorial misconduct mandates reversal is whether the prosecutor's remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45.

{¶20} Smith first submits that the prosecutor violated the rules of discovery when the state failed to produce a copy of the 1986 police file referenced by Detective Johnson. But we are unable to determine what information was contained in that file, so we cannot say that the state was obligated to produce it in discovery. While Smith argues that the file could have contained police reports, witness statements, and medical records, there is nothing in the record to support that supposition. The detective was not questioned about the details of the contents, Smith did not ask that the file be presented to the trial court for review, and Smith did not ask that the file be preserved in the record for this court to review. Smith never made a formal discovery request for the file.

{¶21} The appellant has the burden on appeal to establish error in the trial court. *State v. Carter*, 9th Dist. Summit No. 21622, 2003-Ohio-7170, ¶ 6, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). On this record, Smith has failed to demonstrate that the 1986 police record contained information that the state was required to produce in discovery.

{¶22} Smith also claims that the state engaged in misconduct when it "failed to correct false testimony in the second trial." In a claim of prosecutorial misconduct based on the use of false or perjured testimony, the defendant has the burden to "show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001), quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989).

{¶23} In this case, Smith bases his claim on the assertion that, during the first trial, M.S. testified that V.M. had "told me the full, everything, when she told me everything what [sic] happened." During the second trial, on the other hand, V.M. testified that she had told no one about what had happened to her except the jurors during the 1986 trial. Also, during the second trial, M.S. testified that that she had not heard the specifics of what allegedly had happened to V.M. at the hands of Smith. The state relied on this testimony during closing arguments to rebut the defense theory that the details from V.M.'s accounts had been used to enhance or create the account of what had happened to R.E.

{¶24} "Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor." *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 76 (1st Dist.), quoting *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 41. Additionally, the fact "that a witness contradicts [herself] or changes [her] story

also does not establish perjury." *Id.* As the state points out, there are reasons that M.S. could have characterized what V.M. had told her in different ways without demonstrating that one of the versions is false. Further, examining the *Iacona* factors, Smith has not established that the second version of M.S.'s testimony was false, just that it could be read as inconsistent with her first statement. That is insufficient to establish that the state engaged in misconduct when presenting and relying upon the testimony.

{¶25} Finally, Smith argues that statements made by the prosecutor during closing arguments were improper. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 885 (1984). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 220, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "A prosecutor is entitled * * * to 'wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.' " *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 274, quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970).

{¶26} Defense counsel offered no objection to these alleged instances of prosecutorial misconduct. Smith is thus precluded from predicating error on these alleged improprieties, unless they rise to the level of plain error. *See* Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23. To constitute plain error, an error must be an obvious defect that would clearly, but for the error, have resulted in a different outcome of the trial. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 177, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶27}    During the state's rebuttal closing argument, the prosecutor said that

I've been doing this for a very long time. I can't tell you of a number of trials where a jury, much like yourselves have come back and said not guilty. Just because a jury says not guilty doesn't mean it didn't happen.

I can tell you from my own experience, juries say not guilty for a variety of reasons. Some of them are logical. Some of them, in my opinion, are not so logical, and it's frustrating. Just because a group of people said not guilty doesn't mean it didn't happen.

{¶28}    These comments were made by the state in response to defense counsel's argument, which had attempted to discredit the state's other-acts evidence involving the 1986 investigation and trial. Defense counsel had argued that

Now what angers me as a defense attorney is that we even have to talk about that case from 1986. We live in a country where you stand accused. You face your accuser, you have your day in Court, you clear your name. The end. It's over.

But the State of Ohio's found [a way] to make that not the case. That Michael Smith essentially has to stand trial not just for these allegations here, but also for that case back in 1986.

And that, folks, not guilty verdicts have to mean something.

And again, from my humbled position as a defense attorney, I think that's fundamentally unfair, but, yet, that's what he does, okay? He stands up back then, he stands up now defending himself. He puts that case from 1986 behind him. End of story.

I find it fundamentally unfair but I acknowledge the State has used it today. But ask yourself, why did the State use it? Okay.

The State has to use it because they know the case they currently have before you, this current case, January 26th, it feels thin, okay? There's no physical evidence. We have the allegations. We don't have anything concrete in your hand to back it up. So, yeah, let's strengthen our case, let's bring in these old allegations, and that's what they've done.

{¶29}   In light of the context of the argument of counsel, we conclude that the statements made by the prosecutor were ill-advised but did not rise to the level of plain error. The prosecutor was making the point that the failure of a jury to convict is not the same as establishing that the underlying events did not occur. The same argument could have—and perhaps should have—been made by reference to the jury instructions on reasonable doubt, the state's burden, and the jury's role without reference to the prosecutor's personal experience. We do not agree with Smith that the argument introduced facts that were not presented during the course of the trial.

{¶30}   Smith next cites comments that the prosecutor made relating to a delay between when the incident was first investigated and when the prosecution commenced. Smith's counsel had cited the delay as evidence of sloppy police work during defense's closing argument. In rebuttal, the prosecutor discussed the delay, saying that

I'll tell you all right now, I'm the one who scheduled the grand jury. The reason the case came over in February and did not get scheduled until April was because it sat on my desk. It had absolutely nothing to do with poor police work, with us not thinking we have a good case, I just had other stuff going on and it sat on my desk. It had

absolutely nothing to do with the strength of my case, and anything [the investigator] did wrong. That is on me.

{¶31} The difference between this example and the previous one is that this statement by the prosecutor injects a specific series of events into the timeline of the case that was not presented to the jury in the form of admissible evidence. The specific facts surrounding any preindictment delay were not testified to. The prosecutor asked the jury to accept as true statements about the course of events that had no direct or inferential support from the evidence that had been submitted. This was improper.

{¶32} But establishing that a remark was improper is insufficient to establish that the convictions must be reversed. Smith must also establish prejudice. "In general terms, the conduct of the prosecuting attorney cannot be the ground for error unless such conduct deprives the defendant of a fair trial." *State v. Evans*, 63 Ohio St.3d 231, 240, 586 N.E.2d 1042 (1992), quoting *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). This isolated comment, about an auxiliary issue to the core issues in the case, was insufficient to rise to a level where we question the fairness of the trial. So, while the comments were improper, Smith was not prejudiced by them.

{¶33} Since neither statement by the prosecutor clearly deprived Smith of a fair trial, the trial court's failure to sua sponte admonish the state and instruct the jury to disregard the comments did not amount to plain error. We overrule Smith's third assignment of error.

### Ineffective Assistance of Counsel

{¶34} In his fourth assignment of error, Smith claims that his trial counsel was ineffective and, as a result, his right to due process was violated. To prove ineffective assistance of counsel, a defendant generally has to demonstrate that counsel's performance was deficient and that the deficient performance was

prejudicial. *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Prejudice results when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley* at 142.

{¶35} Smith first argues that trial counsel did not adequately cross-examine the state's witnesses. The scope of cross-examination, however, falls within the ambit of trial strategy. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. This is particularly true in sex cases with minor victims where counsel may be wise to tread lightly in questioning. *State v. Johnson*, 2016-Ohio-4934, 69 N.E.3d 143, ¶ 29 (1st Dist.), citing *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 26 (failure to cross-examine child victims of sex abuse is a matter of trial strategy and does not constitute ineffective assistance). We find nothing deficient in Smith's attorney's cross-examination.

{¶36} Smith next argues that counsel was ineffective for failing to object to the state's failure to produce the 1986 police file, and for failing to pursue sanctions for the alleged discovery violation. But there is nothing in this record to establish that Smith would have been entitled to the information. Even if we were to assume for the purpose of this argument that the material was subject to discovery, we conclude that Smith cannot show prejudice as a result. The 1986 police file related to the allegations involving Smith and V.M., not the allegations in this case. The material was secondary to the main issues of the case which were the conduct of Smith with R.E. Having more information about the 1986 incidents, in light of the fact that those incidents were testified to, would not have changed the outcome of the proceedings below.

14

{¶37}    Finally, Smith argues that trial counsel was ineffective for failing to object to the statements made by the prosecutor during closing arguments that formed the basis for the third assignment of error.  For the reasons that have been set forth above, Smith failed to show that either comment prejudiced him such that he was denied a fair trial.  Had counsel objected to the statements, our decision would not have changed.  We overrule Smith's fourth assignment of error.

### Cumulative Error

{¶38}    In his final assignment of error, Smith claims that the cumulative effect of the errors outlined in his first four assignments of error entitles him to a new trial, even if the effect of each individual error would be insufficient on its own. Under the doctrine of cumulative error, a conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial.  *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.  But we have not found multiple instances of harmless error in this case, so the doctrine does not apply.  We overrule Smith's fifth assignment of error.

### Conclusion

{¶39}    Having considered and overruled all five assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MILLER** and **DETERS, JJ.,** concur.

Please note:
> The court has recorded its own entry on the date of the release of this opinion.