[Cite as *State v. Griffin*, 2025-Ohio-1403.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-04-029 |
| | : | O P I N I O N |
| - vs - | | 4/21/2025 |
| | : | |
| MICHAEL CARL GRIFFIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CR 000577


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Michael Carl Griffin, pro se.



**M. POWELL, J.**

{¶ 1} Pro se appellant, Michael Griffin, appeals his convictions in the Clermont County Court of Common Pleas. For the reasons detailed below, we affirm.

{¶ 2} This case involves a series of overnight break-ins at convenience stores across Clermont County. The break-ins were depicted in the various convenience stores'

security camera recordings. In each incident, a thin man, masked and dressed in dark clothing, would forcibly enter the store and head straight for the ATM. Using a yellow circular saw with a red blade, the man would make a square cut on the machine below the pin pad to gain access to the cash inside. After securing the money, the man would exit the store, leaving the rest of the premises undisturbed.

{¶ 3} The break-ins occurred at the Village Grocery on December 6, 2022, and again on May 31, 2023. Additional incidents took place at the Loveland Express on June 6, 2023, and at the Marathon gas station in Milford on June 11, 2023 ("Clermont County offenses").

{¶ 4} During the investigation, law enforcement discovered that the suspect used an electric scooter to flee the crime scenes. Further investigations led authorities to identify Griffin as a potential suspect. Investigators reviewed Griffin's Amazon purchase history, revealing purchases of items matching those worn by the offender, including Crysully pants, a balaclava face mask, and a matching backpack. Additionally, Griffin purchased saw blades compatible with the circular saw, as well as repair equipment for an electric scooter.

{¶ 5} On August 3, 2023, Officer Jahmir Johnson of the Springfield Township Police Department was dispatched to a BP gas station in Hamilton County on a report of a break-in ("Hamilton County offense"). Upon arrival, Officer Johnson observed sparks flying inside the store near the ATM, indicating that the perpetrator was actively using a saw on the machine. Moments later, Griffin, a thin man wearing a mask and all-dark clothing exited the store carrying a circular saw and two boxes of cash.

{¶ 6} Upon seeing Officer Johnson, Griffin attempted to flee, leading to a brief chase. As he fled, Griffin dropped the cash he was carrying, along with his saw and backpack. After detaining Griffin, Officer Johnson returned to the crime scene. He

observed that the bolt to the front door had been cut, and the ATM had been opened with a square cut below the pin pad. However, nothing else in the store appeared to be disturbed. Officer Johnson recovered the items dropped by Griffin, including the backpack and a yellow DeWalt circular saw with a red blade. In addition, he discovered an electric scooter just a few feet away from where Griffin ditched his backpack.

{¶ 7} On September 21, 2023, Griffin was indicted on four counts of breaking and entering, four counts of safecracking, one count of grand theft, and two counts of theft related to the Clermont County offenses.[1] He pled not guilty, and the matter proceeded to a jury trial.

{¶ 8} During trial, the state presented evidence as to each of the four Clermont County offenses. Specifically, the state presented evidence that each of the break-ins occurred in the overnight hours when the stores were closed. The man would force entry by either breaking the glass door with a window punch or by cutting the bolt to the door. The man would then head straight to the ATM and begin cutting into the machine with a circular saw. The state introduced video evidence showing that each offense was committed by a man matching Griffin's description, utilizing the same method each time. The state also elicited testimony from two detectives who testified about the distinct nature of the break-ins and about the observable features of the man perpetrating the crimes. For instance, Detective Grooms testified that the offense was very unique for a break-in, as thieves generally target alcohol, cigarettes, the cash register, and lottery tickets, while the man caught on camera here was only focused on the ATM. Finally, the state presented the testimony of Officer Johnson who testified about the details of the Hamilton County offense for which Griffin was arrested.

---

1. Griffin was separately indicted by a Hamilton County Grand Jury for the Hamilton County offense.

**{¶ 9}** After the state presented its case-in-chief, Griffin's counsel informed the court that Griffin wished to testify in his own defense. However, Griffin requested that the state be prohibited from cross-examining him about the Hamilton County offense. The trial court denied this request, explaining that Griffin could either exercise his right to remain silent or choose to testify, but he could not limit the scope of cross-examination. Griffin elected to remain silent, and the case was submitted to the jury. After deliberation, the jury returned a guilty verdict on all counts. Griffin was ultimately sentenced to a total prison term of 8 years. Griffin now appeals, raising three assignments of error for review. For ease of discussion, we will address Griffin's assignments of error out of order.

**{¶ 10}** Assignment of Error No. 2:

THE TRIAL COURT ERRED WHEN IT ADMITTED BAD ACTS EVIDENCE THAT GRIFFIN WAS ARRESTED ON AN UNRELATED MATTER IN HAMILTON COUNTY, OHIO.

**{¶ 11}** In his second assignment of error, Griffin argues the trial court erred by admitting other-acts evidence from the Hamilton County offense. However, no objection was raised regarding the admission of this other-acts evidence. Generally, this court will not reverse a trial court's decision regarding the admission of evidence absent an abuse of discretion. *State v. Kinsworthy,* 2014-Ohio-1584, ¶ 16 (12th Dist.); *State v. Baldwin,* 2024-Ohio-2397, ¶ 32 (12th Dist.). When no objection is raised, appellate review is limited to plain error. *Kinsworthy* at ¶ 16; *State v. Sims,* 2021-Ohio-4009, ¶ 17 (8th Dist.).

**{¶ 12}** "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith,* 2020-Ohio-4441, ¶ 36. "Other-acts evidence may, however, be admissible for another non-character-based purpose, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or [lack of] accident.'" *Id.*, quoting Evid.R. 404(B)(2). "The key is that the evidence must prove

- 4 -

something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22. The other-acts evidence "is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Id.*

{¶ 13} The supreme court has articulated a three-part analysis for the admission of other-acts testimony. *State v. Fannin*, 2021-Ohio-2462, ¶ 17 (12th Dist.), citing *State v. Williams*, 2012-Ohio-5695, ¶ 20. According to this analysis, the evidence must meet the following criteria to be admissible (1) it must be relevant, (2) it must be introduced for a purpose other than proving propensity, and (3) its probative value must not be substantially outweighed by the risk of unfair prejudice. *Fannin* at ¶ 17.

{¶ 14} "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Tunstall*, 2020-Ohio-5124, ¶ 34 (12th Dist.), quoting Evid.R. 401. "In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *Smith*, 2020-Ohio-4441 at ¶ 37.

{¶ 15} In this case, the other-acts evidence from the Hamilton County offense was properly admissible under Evid.R. 404(B) to establish Griffin's identity as the offender in the Clermont County offenses, as there were key similarities constituting a modus operandi. Modus operandi evidence refers to "signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.'" *Hartman* at ¶ 37, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019).

{¶ 16} Griffin does not dispute that the offenses committed in Clermont County and Hamilton County were virtually identical. Instead, he argues that the other-acts evidence from Hamilton County should not have been admissible because he had not yet stood

- 5 -

trial for that offense and therefore was entitled to a presumption of innocence. However, this argument is without merit, as other-acts evidence does not require a conviction to be admissible. Evid.R. 404(B) clearly states that other "crimes" or "wrongs" may be admissible for a permissible purpose. As this court has stated previously, "[o]ther-acts evidence need be proved only by substantial proof, not proof beyond a reasonable doubt." *State v. Hignite*, 2015-Ohio-5204, ¶ 18 (12th Dist.). Indeed, other-acts evidence can be admitted even if the accused was acquitted of the charge constituting the other-acts evidence. *State v. Smith*, 2018-Ohio-4615, ¶ 14 (1st Dist.).

**{¶ 17}** Here, the evidence regarding the Hamilton County offense was both relevant and introduced for a purpose other than propensity, i.e., identity. In addition, although the other-acts evidence was certainly unfavorable to Griffin, it possessed a high probative value that was not substantially outweighed by a risk of unfair prejudice. *See State v. Barahona-Lara*, 2024-Ohio-3048, ¶ 53 (12th Dist.)("[U]nfavorable evidence is not equivalent to unfairly prejudicial evidence.")

**{¶ 18}** Finally, we note the record reflects that the trial court took steps to minimize the danger of unfair prejudice and to ensure that the evidence was considered only for its proper purpose. As the supreme court has held, "an appropriate jury instruction geared toward the specific purpose for which the evidence has been admitted will help reduce the risk of confusion and unfair prejudice." *Hartman*, 2020-Ohio-4440 at ¶ 34. In this case, the trial court provided a limiting instruction to the jury, clarifying that the evidence was admissible solely for the purpose of establishing identity and not for proving Griffin's character. It is well established that a jury is presumed to follow and comply with instructions given by the trial court. *Hignite* at ¶ 20. Accordingly, there was no error, plain or otherwise, in the admission of the other-acts evidence, and Griffin's second assignment of error is overruled.

**{¶ 19}** Assignment of Error No. 1:

GRIFFIN'S CONVICTIONS ARE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

**{¶ 20}** In his first assignment of error, Griffin alleges that his convictions are not supported by sufficient evidence. He argues that there was impermissible inference stacking, particularly with respect to his Amazon purchase history to link him to the crimes. Griffin also argues that the other-acts evidence is not sufficient evidence to support his conviction, again, because he was entitled to a presumption of innocence.

**{¶ 21}** It is well settled that to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue. *State v. Hibbard*, 2023-Ohio-983, ¶ 20 (12th Dist.). The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence. *Id.* Circumstantial and direct evidence have the same probative value. *State v. Lee*, 2021-Ohio-2544, ¶ 25 (12th Dist.).

**{¶ 22}** Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Marshall*, 2024-Ohio-4445, ¶ 45 (12th Dist.).

**{¶ 23}** "Impermissible inference stacking" involves drawing an inference based entirely upon another inference, unsupported by any additional facts or another inference

derived from facts. *State v. Everhart*, 2020-Ohio-4948, ¶ 17 (12th Dist.). The rule is "extremely limited" and does not prohibit drawing parallel inferences in combination with additional facts or drawing multiple, separate inferences from the same facts. *State v. Braden*, 2014-Ohio-3385, ¶ 12-13 (12th Dist.).

**{¶ 24}** Following review, we find that the jury was not required to impermissibly stack inferences to find Griffin guilty. The state presented evidence that a man fitting Griffin's description committed a series of break-ins using the same modus operandi. The man wore dark clothing, a balaclava face mask, a hat, and used a yellow circular saw with a red blade to carry out the offenses in an identical manner.

**{¶ 25}** The suspect evaded capture for several months; however, law enforcement eventually identified Griffin as a prime suspect. Authorities obtained evidence that Griffin made multiple purchases from Amazon for items consistent with those used or worn during the offenses. These purchases included Crysully pants, a balaclava face mask, and a matching backpack. He also bought saw blades compatible with the circular saw and parts for the electric scooter. Moreover, as previously discussed, other-acts evidence related to the Hamilton County offense was properly admissible to identify Griffin through his modus operandi. From this evidence, the jury could reasonably infer that Griffin was the individual responsible. Griffin's arguments that the jury engaged in impermissible inference stacking are without merit. Accordingly, we find that Griffin's convictions are supported by sufficient evidence, and his first assignment of error is overruled.[2]

**{¶ 26}** Assignment of Error No. 3:

> GRIFFIN WAS DENIED HIS FIFTH AMENDMENT
> PRIVILEGE AGAINST SELF INCRIMINATION BY THE

---

2. We note that Griffin makes an additional argument at the end of his first assignment of error, stating that "exhibit 8E was not authenticated and therefore cannot be considered." However, he presents no supporting argument. Consequently, this court will not address this undeveloped and conclusory claim. App.R. 12(A); App.R. 16(A)(7). *State v. Bowling*, 2024-Ohio-1638, ¶ 4 (12th Dist.).

COURT.

**{¶ 27}** In his third assignment of error, Griffin contends that his Fifth Amendment right against self-incrimination was violated because the trial court did not allow him to take the stand and avoid cross-examination on the Hamilton County offense. However, it is well established that criminal defendants who voluntarily take the stand in their own defense voluntarily subject themselves to cross-examination. *State v. Roten*, 2002-Ohio-4488, ¶ 12 (12th Dist.); *State v. Madison*, 2020-Ohio-3735, ¶ 125 ("A defendant has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts."). In this case, Griffin was not entitled to restrict the state's cross-examination regarding the Hamilton County offense. After learning that he would not be entitled to restrict the scope of the state's cross-examination, Griffin invoked his right not to testify. Accordingly, there was no violation of his Fifth Amendment right against self-incrimination. Griffin's third assignment of error is overruled.

**{¶ 28}** Judgment affirmed.

BYRNE, P.J., and SIEBERT, J., concur.