[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Smith*, Slip Opinion No. 2020-Ohio-4441.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4441

THE STATE OF OHIO, APPELLEE, *v.* SMITH, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Smith*, Slip Opinion No. 2020-Ohio-4441.]

*Criminal law—Other-acts evidence—Evid.R. 404(B)—The protection against double jeopardy provided by Article I, Section 10 of the Ohio Constitution does not categorically bar the use of other-acts evidence relating to past criminal charges for which a criminal defendant was acquitted—Other-acts evidence must be probative of a proper particular purpose for which it is offered and must not be premised on asking jurors to draw improper character inferences—Other-acts evidence must be excluded under Evid.R. 403(A) when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.*

(No. 2018-1831—Submitted January 29, 2020—Decided September 22, 2020.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-170335, 2018-Ohio-4615.

_____

**DeWine, J**.

**{¶ 1}** Michael Smith was charged with sexually abusing his granddaughter. At his trial, the state sought to introduce "other acts" evidence that he had molested his daughter under similar circumstances decades earlier—allegations for which Smith had been put on trial but ultimately acquitted. The trial court allowed the other-acts evidence to be admitted at his current trial, Smith was convicted, and that conviction was upheld on appeal. We accepted jurisdiction of this case to consider two challenges that Smith raises to the introduction of the evidence of the prior conduct, one constitutional and one evidentiary.

**{¶ 2}** First, we are asked to categorically hold that allowing the state to present evidence related to crimes for which a defendant has been acquitted violates the defendant's rights under the Double Jeopardy Clause of the Ohio Constitution. Because we find nothing in the text or history of our Constitution that would support such a conclusion, we reject this challenge.

**{¶ 3}** Second, we consider whether the acquitted-act evidence in this case was admitted for a proper purpose under Evid.R. 404(B)—which prohibits the use of evidence related to other acts of the defendant to show his character or propensity to commit crimes—as well as whether the evidence was relevant and not unduly prejudicial. Because Smith claimed as part of his defense that if he touched his granddaughter inappropriately, it was an accident and not done with sexual intent, the state could permissibly refute that claim by presenting evidence that he had molested his daughter under similar circumstances. We therefore affirm the judgment of the First District Court of Appeals.

## I. Smith Is Charged with Raping His Granddaughter in 2016

### A. The 2016 Incident

**{¶ 4}** On New Years' Day 2016, Smith made plans to take three of his granddaughters to a matinee of the new *Star Wars* movie and Smith's daughter dropped them off at his home. The youngest fell asleep and they missed the movie,

so he offered to have the girls stay the night and take them to see it the next day. Their mother approved.

{¶ 5} When she picked up her girls the following day, the mother noticed that ten-year-old R.E. was not acting like herself. Later, after they got home, R.E. told her mother that something had happened at Smith's house.

{¶ 6} R.E. described what happened this way. When it was bedtime, the girls climbed into Smith's bed and began watching a cartoon. While lying next to Smith, she told him that dog hair in the bed was making her itch. Smith rubbed baby oil on her to help with the discomfort. But rather than apply it only to her back as he had done in the past, he rubbed the oil under her clothing on her chest, buttocks, and vagina. Smith then started licking her breasts and vagina. After a time, he got up and put on a pornographic film depicting oral and vaginal intercourse. By this time, R.E.'s younger sisters were asleep in the bed. R.E. eventually fell asleep too.

{¶ 7} She was awakened the next morning when Smith pulled her hand down and placed it on his penis. She yanked her hand away, and he began pressing his penis into her backside. He started to pull her underwear down, but she moved away and he got out of bed.

{¶ 8} R.E.'s mother went to the police when she learned what Smith had done. At the suggestion of law enforcement, she called Smith from a police station on a recorded line. Confronted about the incident, Smith admitted putting baby oil on R.E., but denied touching her inappropriately and insisted that any improper contact was accidental. He also denied pressing his penis against the girl, but said that he gets erections while he is sleeping and suggested that R.E. may have brushed against him. And Smith claimed that what R.E. had seen was a few seconds of an R-rated movie that accidentally began playing and he did not possess any pornography.

{¶ 9} The state indicted Smith for two counts of rape, three counts of gross sexual imposition, and one count of disseminating matter harmful to a juvenile. An initial attempt to try Smith resulted in a mistrial after the jury was unable to reach a verdict. A second trial was conducted before a different judge.

{¶ 10} R.E. and her mother testified to the facts we've just described, and the state played the recorded conversation with Smith for the jury. Smith took the stand in his defense and largely stuck to his initial story. He said he applied the baby oil where R.E. said she itched: on her back, legs, and chest. But he did so, he said, without any sexual intent. He denied touching R.E. underneath her underwear; he said that if he got too close to her private parts, it was an accident. And Smith again denied showing the girls pornography. He said that he put a *SpongeBob* DVD into the player, but the device instead started playing an R-rated VHS movie that was already in the machine. By his account, the scene that came on depicted a woman's breasts and that must have been what R.E. had described as pornography.

### B. The 1986 "Other-Acts" Evidence

{¶ 11} In 1986, Smith had been charged with the sexual battery of his daughter V.M. when she was a minor. A jury acquitted him. Prior to trial in the present case, the state gave notice that it intended to have V.M. and her younger sister L.S.—now adults—testify about the events underlying the 1986 case, asserting that the prior conduct was similar to what happened with their niece, R.E. Smith filed a motion in limine to have the testimony excluded, and V.M. and L.S. testified at a hearing on the motion before the start of Smith's first trial.

{¶ 12} At the hearing, V.M. described molestation by Smith spanning from the time that she was a young child to her teenage years. She testified that Smith fondled her vaginal and rectal regions, performed oral sex on her and forced her to reciprocate, and showed her and L.S. pornographic films depicting oral sex. A substantial portion of this abuse had occurred at the home of her grandparents, with

whom Smith had lived then; this house is the same house where Smith was alleged to have abused R.E. in 2016.

{¶ 13} L.S. also testified at the hearing. She confirmed that Smith had forced her and V.M. to watch pornographic displays of oral sex. L.S. described an evening when the girls were asleep on a pull-out couch with Smith, during which she woke up and saw Smith putting his hands up her sister's shirt. L.S. told her mother what she had witnessed, which culminated in charges being filed against Smith.

{¶ 14} The state argued that the testimony was admissible under Evid.R. 404(B) to show "a common scheme and a lack of a mistake or an accident." Specifically, the state contended that the evidence rebutted Smith's claims during the recorded phone call that any inappropriate touching had been unintentional and that he had not played a pornographic film but instead had accidentally played a few seconds of an R-rated movie. The state noted that the conduct was similar in that in both situations, Smith had shown scenes of oral sex to minors and had abused a minor who was asleep in the same bed as him.

{¶ 15} Smith's attorney argued that it is not enough to show that two incidents occurred in the same manner; that is not a common scheme, he contended, but merely evidence that the defendant may have committed two crimes of the same nature. Defense counsel also argued that presenting evidence of crimes for which Smith had been acquitted 30 years before would force Smith to defend himself against those charges a second time in addition to defending against the present allegations; he suggested that doing so would present constitutional concerns as well as practical difficulties.

{¶ 16} The trial court found evidence of the 1986 incidents potentially admissible to show "lack of mistake, preparation, [and] plan." The court did not engage in an overt analysis regarding whether the evidence was admissible under Evid.R. 403(A), which requires a court to exclude relevant evidence if its probative

value is outweighed by the danger of unfair prejudice. Prior to the second trial, the defense attorney renewed his motion in limine, arguing that the state was collaterally estopped from presenting evidence of the 1986 allegations because of Smith's acquittal and that the evidence did not meet the requirements of Evid.R. 404(B). Relying on the testimony from the earlier hearing on the motion in limine as well as the renewed motion and arguments, the trial court ruled that the evidence could be admitted during the retrial pursuant to Evid.R. 404(B).

{¶ 17} V.M.'s and L.S.'s testimony at the retrial was substantially the same as their testimony at the pretrial hearing. Before they testified, the court provided a limiting instruction admonishing the jury that V.M.'s and L.S.'s testimony could not be considered "to prove the character of the Defendant in order to show that he acted in accordance with that character." And in its final instructions to the jury, the court instructed that the other-acts evidence was to be considered "only for the purpose of deciding whether it proves the Defendant's motive, opportunity, intent or purpose, preparation, and/or plan to commit the offense charged in this trial."

*C. Smith's Conviction and Appeal*

{¶ 18} The jury convicted Smith on the gross-sexual-imposition and dissemination counts, but it acquitted on the rape charges. Smith appealed, asserting among other things that the trial court had not engaged in the proper analysis to determine the admissibility of V.M.'s and L.S.'s testimony, that courts should categorically prohibit the use of other-acts evidence of conduct for which the accused had been acquitted in a previous prosecution, and that the admission of such evidence in this case violated Smith's rights under the Ohio and United States Constitutions. The First District Court of Appeals affirmed Smith's convictions. It concluded that the other-acts evidence was relevant "to show motive, intent and absence of mistake." 2018-Ohio-4615, ¶ 12. The court also rejected Smith's constitutional challenge, explaining that because the standard of proof for admission under Evid.R. 404(B) is lower than for a criminal conviction, the prior

6

acquittal did not collaterally estop the state from presenting evidence of the 1986 allegations. *Id.* at ¶ 14, citing *United States v. Felix*, 503 U.S. 378, 386, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

{¶ 19} We accepted Smith's appeal to consider two propositions of law. *See* 155 Ohio St.3d 1404, 2019-Ohio-943, 119 N.E.3d 432. In the first, we are asked to hold that the Ohio Constitution bars the use of any other-acts evidence relating to past criminal charges for which a criminal defendant has been acquitted. In the second, Smith argues that the other-acts evidence should not have been admitted under Evid.R. 403 and 404(B) and our prior caselaw construing those rules.

## II. The Double-Jeopardy Protection

{¶ 20} In his merit brief in the court of appeals, Smith cited the double-jeopardy provisions of the federal and Ohio Constitutions. Without distinguishing between the two documents, he argued that the double-jeopardy protection contains a collateral-estoppel element that prevents the admission of evidence of conduct that was the subject of a prior acquittal.

{¶ 21} Smith can obtain no relief under the federal Constitution. The United States Supreme Court has held that the federal double-jeopardy provision does not preclude evidence of conduct that was subject to a prior acquittal from being introduced as other-acts evidence in a subsequent trial for a different offense. *Dowling v. United States*, 493 U.S. 342, 348-350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Thus, Smith now limits his double-jeopardy argument to the Ohio Constitution.

{¶ 22} The Ohio Constitution guarantees that "[n]o person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10. This language dates back in nearly identical form to Ohio's first Constitution. *See* 1802 Constitution, Article VIII, Section 11. Ohio's constitutional provision is similar to the protection provided by the Fifth Amendment to the United States

Constitution: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb."

{¶ 23} On its face, the Ohio Constitution's guarantee speaks only of being placed in jeopardy for the "same offense." Nonetheless, Smith argues that Ohio's provision contains a collateral-estoppel element that precludes the use of other-acts evidence related to a prior acquittal in a subsequent prosecution for a different crime.

{¶ 24} The notion that the double-jeopardy protection contains a collateral-estoppel element has its genesis in the United States Supreme Court's decision in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case, the court dealt with a defendant who was accused of being one of a group of masked men who robbed multiple players in a poker game. After the defendant was acquitted of robbing one of the players, the court held he could not be tried for robbing another player at the same game because the prior jury's verdict of acquittal meant that that jury could not conclude beyond a reasonable doubt that he was one of the robbers. *Id.* at 445-446. Thus, the court in *Ashe* established a rule that the government may not try a defendant if to secure a conviction, the "prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." *Currier v. Virginia*, ___ U.S. ___, 138 S.Ct. 2144, 2150, 201 L.Ed.2d 650 (2018).

{¶ 25} In *Dowling*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708, the United States Supreme Court refused to extend *Ashe* to encompass the scenario that we are presented with today. In rejecting the double-jeopardy claim, the court explained that the standard for admitting other-acts evidence pursuant to Fed.R.Evid. 404(b) is lower than that required for a criminal conviction, and therefore the prior action did not determine an ultimate issue in the case. *Id*. at 348-349. The court determined that a jury could reasonably believe that a defendant likely committed a prior act even if it possessed a reasonable doubt that he did so.

Thus, even under principles of collateral estoppel, the prior acquittal did not preclude consideration of the evidence.

{¶ 26} Smith asks us to hold that Ohio's double-jeopardy provision includes a collateral-estoppel element. But he asks us to go beyond the United States Supreme Court's interpretation of the federal provision and hold that Ohio's provision precludes *any* use of acquittal evidence, even if the traditional elements of collateral estoppel would not apply. Specifically, he would like us to read into the Ohio Constitution the view advocated by Justice Brennan's dissent in *Dowling*. Under that view, the double-jeopardy protection bars the use of any fact found in a defendant's favor in a prior proceeding. *Dowling* at 356-357 (Brennan, J., dissenting). Further, the state would be required to show that any issue it sought to relitigate was not resolved in the defendant's favor in the prior proceeding. *Id.* at 357.

{¶ 27} We have generally treated the double-jeopardy protection articulated in Article I, Section 10 of the Ohio Constitution as coextensive with that contained in the Fifth Amendment to the United States Constitution. *State v. Gustafson*, 76 Ohio St.3d 425, 432, 668 N.E.2d 435 (1996) (citing cases); *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, ¶ 6. And there is reason to think that at least at the time of its adoption, Ohio's provision extended the same double-jeopardy protection to state prosecutions that the federal Constitution extended to federal prosecutions.[1] The wording of the two provisions is nearly identical, and Ohio's provision was included in the first Ohio Constitution, which was adopted about a decade after the ratification of the federal Bill of Rights. Moreover, both provisions have been said to have their basis in the common-law

---

1. It was not until 1969 that the United States Supreme Court concluded that the federal double-jeopardy protection applied to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

understanding of the protection. *See Currier*, ___ U.S. at ___, 138 S.Ct. at 2152-2153, 201 L.Ed.2d 650; *Hurley v. State*, 6 Ohio 399, 402 (1834).

{¶ 28} Smith is correct that because the Ohio Constitution is "a document of independent force," *Arnold v. Cleveland*, 67 Ohio St.3d 35, 42, 616 N.E.2d 163 (1993), we are not bound to walk in lockstep with the federal courts when it comes to our interpretation of the Ohio Constitution. Indeed, there are good reasons why we might choose not to do so. *See generally* Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* (2018). And even if the provisions were initially understood to provide functionally the same protections, we are not bound to mirror subsequent United States Supreme Court decisions delineating the scope of the protection.

{¶ 29} But Smith offers no persuasive reason that the Ohio Constitution entitles him to the relief he seeks. In construing our state Constitution, we look first to the text of the document as understood in light of our history and traditions. *See Arnold* at 43-46. Smith does not present any argument relating to the "unique language [or] historical background" of the Ohio constitutional provision that would support the result he seeks. *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 28 (Fischer, J., concurring). Instead, Smith reargues the debate between Justice Brennan and the *Dowling* majority and asserts that a complete bar of acquittal evidence would be more just and more workable in practice. But he presents nothing from the text or history of Ohio's constitutional provision to support the relief he seeks.

{¶ 30} Start with the text. "No person shall be twice put in jeopardy for the same offense." Ohio Constitution, Article I, Section 10. Over a century ago, this court interpreted the meaning of the word "offense" in that provision, concluding, "[l]ayman and lawyer alike understand the word 'offense' to here mean simply a crime." *State v. Rose*, 89 Ohio St. 383, 386, 106 N.E. 50 (1914). The court went on, "The words 'same offense' mean same offense, not the same transaction, not

the same acts, not the same circumstances or same situation." *Id.* The provision speaks not about the relitigation of issues but of offenses. Thus, if one simply looks to the text of the provision, it does not bar the use of evidence related to the crimes for which Smith was tried in 1986, because his 2016 prosecution was for different offenses.

{¶ 31} Smith fares no better when we look to the clause's history and our early interpretations of the provision. In 1834, this court said of Ohio's provision, "[N]o rule is better settled than that which prohibits putting a person twice in jeopardy for the same crime; and our Constitution is nothing more than the recognition of the common law principle on that subject." *Hurley*, 6 Ohio at 402. Indeed, this court in *Hurley* relied on the English common law as authority without reference to the United States Constitution's double-jeopardy provision. The common-law rule barred only a subsequent prosecution for the same offense. *See United States v. Wilson*, 420 U.S. 332, 339-340, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), citing 3 Edward Coke, *Institutes of the Laws of England*, 212-213 (6th Ed.1680), and 4 William Blackstone, *Commentaries on the Laws of England*, 335-336.

{¶ 32} Historically, we have interpreted the Ohio Constitution's double-jeopardy provision in line with that offense-based understanding. Thus, in an 1876 case, we held that a prior acquittal on a charge would not preclude the state from using evidence from the first trial to convict the defendant of a similar offense. *Bainbridge v. State*, 30 Ohio St. 264, 272-273 (1876). In that case, the defendant had previously been acquitted on a charge of selling adulterated milk. At the first trial, the state had presented evidence that the defendant had sold adulterated milk on multiple occasions over a period of several months. In the second proceeding, the defendant was indicted on additional charges for sales of adulterated milk that took place during the same time period as the evidence adduced at the first trial. *Id.* at 271. The defendant argued that the prior acquittal acted as a bar to the subsequent

charges. This court disagreed, noting that while the state had put on evidence of illegal sales during the entire time period, the prosecutor in the first trial had been required to elect the particular milk sale for which he sought a conviction and the jury verdict thus barred only a subsequent conviction for that transaction. *Id*. Applying this offense-based understanding, we explained that "[w]hile it is the right of every person not to be put in jeopardy more than once for the same offense, the principle should be so applied as not to create an immunity for crimes which do not constitute the offenses for which the criminal has once been exposed to punishment." *Id.* at 272. For the protection to apply, the " 'prosecution [must be] for the same identical act and crime.' " *Id.*, quoting 4 William Blackstone, *Commentaries on the Laws of England*, at 336.

{¶ 33} In *Patterson v. State*, 96 Ohio St. 90, 117 N.E. 169 (1917), this court addressed a remarkably similar claim to the one presented here. In that case, the defendant was tried for theft of an automobile. *Id*. at 94. The state presented evidence of another car theft for which the defendant had been acquitted, on the theory that both thefts were part of a larger scheme involving the defendant. *Id*. This court rejected the claim that the acquittal prevented the state from presenting evidence of the other car theft. In line with the common-law understanding, the *Patterson* court held that the situation did not implicate double-jeopardy concerns because the two crimes were distinct offenses. *Id*. The court concluded, "There is no guarantee, either by constitution or by statute, that evidence offered upon the trial of the accused for a different offense, of which he was convicted or acquitted, may not be offered to prove a distinct but related offense." *Id*. at 95. And even though it held that double-jeopardy protections were not invoked by the use of the acquitted-act evidence at a trial for a different offense, the court nevertheless questioned the assertion that an acquittal would have a preclusive effect under the doctrine of collateral estoppel:

> But why should a former acquittal be conclusive as an adjudication of the facts involved therein upon a second trial for a separate and distinct offense resulting from the plan or scheme under which both offenses were committed?  On the former trial the witnesses for the state may have committed perjury resulting in such acquittal, or may have absented themselves from the state.  The acquittal may have resulted from an erroneous charge, misconduct of counsel or jury, lack of proof upon a single material element, or from other causes.  Can it reasonably be urged, either from the standpoint of law or good morals, that the state * * * is in any way estopped from marshaling its competent evidence upon a subsequent trial for another offense, proving a common scheme or plan to steal specified automobiles, followed, in fact, by the theft of each?

*Id*. at 96.

{¶ 34} In sum, neither the text of Article I, Section 10, nor the historical understanding of that provision support Smith's proposed reading.  We therefore reject Smith's claim that the admission of other-acts evidence violated the Ohio Constitution's protection against double jeopardy.

### III.  Ohio's Due Course of Law Clause

{¶ 35} Smith also asks us to conclude that the admission of other-acts evidence related to a prior acquittal "violates the fundamental fairness component" of the Ohio Constitution's Due Course of Law Clause, Article I, Section 16.  Even under a generous reading of his appellate briefing, this is not an issue that Smith raised below.  Other than an unexplained mention of Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution in the text stating his first assignment of error, Smith did not make any due-process argument relating to the use of other-acts evidence in his merit briefs

in the court of appeals. We generally decline to consider issues that were not raised in the court of appeals. *Wireman v. Keneco Distribs., Inc.*, 75 Ohio St.3d 103, 108, 661 N.E.2d 744 (1996); *State v. Phillips*, 27 Ohio St.2d 294, 302, 272 N.E.2d 347 (1971). We follow that rule today and decline to consider Smith's due-course-of-law argument.

### IV. Other-Acts Evidence

#### A. *The Basics of Other-Acts Evidence*

{¶ 36} Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Other-acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, __ Ohio St.3d __, 2020-Ohio-4440, ___ N.E.3d ___, ¶ 22.

{¶ 37} In *Hartman*, we provided a guide for courts to evaluate proposed other-acts evidence to determine whether the evidence connects to a permissible purpose without relying on any improper character inferences. The threshold question is whether the evidence is relevant. *Id.* at ¶ 24; Evid.R. 401; *see also State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. As we explained in *Hartman*, the problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant. *Hartman* at ¶ 25; *see* 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev.1983). In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute. *Hartman* at ¶ 26-27; *see also Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**{¶ 38}** Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case. If the evidence is not premised on improper character inferences and is probative of an issue in the case, the court must then consider whether the evidence's value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A); *Hartman* at ¶ 29. Because other-acts evidence " 'almost always carries some risk that the jury will draw the forbidden propensity inference,' " courts should be vigilant in balancing the prejudicial impact of the evidence against its probative value. *Id.* at ¶ 33, quoting *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir.2014) (en banc).

### B. The Other-Acts Evidence Was Properly Admitted

**{¶ 39}** Applying these principles here, we turn to the admissibility of V.M.'s and L.S.'s testimony under our evidentiary rules. The state contended—and the trial court found—that evidence relating to the 1986 allegations was admissible for two main purposes: to show a common scheme or plan and to show an absence of mistake.

**{¶ 40}** We provided a detailed explanation of common-scheme or plan evidence in *Hartman*. In short, evidence of a plan must generally demonstrate that the other acts are part of the same transaction as the crime charged or part of a sequence of events leading up to the instant crime. *Hartman*, __ Ohio St.3d __, 2020-Ohio-4440, ___ N.E.3d ___, at ¶ 41, citing Weissenberger, *Federal Evidence*, Section 404:18 (7th Ed.2019). We explained that the evidence should show that the other acts and the present crime are tied to "the same grand design"; otherwise, "proof that the accused has committed similar crimes is no different than proof that the accused has a propensity for committing that type of crime." *Id.* at ¶ 46.

**{¶ 41}** The other-acts testimony in this case was not evidence of a plan. Smith's alleged abuse of his daughter and that of his granddaughter are discrete events occurring some 30 years apart—not a plan embracing both the prior criminal

activity and the charged crimes. Without a direct connection between the two incidents, evidence that Smith has a design to molest the girls is tantamount to saying he has a disposition to do so.

{¶ 42} Often, litigants conflate plan evidence with modus operandi evidence. With respect to a defendant's modus operandi, entirely separate offenses may become linked in that they share a truly " 'distinctive, one-of-a-kind' " feature. *Hartman* at ¶ 37, quoting 1 Imwinkelried, Giannelli, Gilligan, Lederer & Richter, *Courtroom Criminal Evidence*, Section 907 (6th Ed.2016). While there are similarities between Smith's alleged abuse of his daughter and that of his granddaughter, those similarities do not demonstrate a signature " 'method of working' " such that the "separate crimes are recognizable as the handiwork of the same wrongdoer." *People v. Barbour*, 106 Ill.App.3d 993, 999-1000, 436 N.E.2d 667 (1982); *see Hartman* at ¶ 37. Indeed, the facts presented in both cases are unfortunately typical of such abuse. Moreover, even if the 1986 allegations shared a unique modus with the crimes in this case, they still would not be admissible under this theory: modus operandi evidence is relevant to identify the perpetrator, and Smith's identity as the alleged perpetrator was not disputed.

{¶ 43} Thus, we conclude the trial court was incorrect in its conclusion that the evidence was admissible to show a common scheme or plan. Nonetheless, we agree with the other part of the trial court's assessment—the evidence was admissible to show an absence of mistake.

{¶ 44} At trial, the defense's general theory was that when Smith applied baby oil to R.E.'s body, he did so without any sexual intent and any contact with her private parts was accidental. His response to R.E.'s claim that he pressed his penis against her was that if it happened, it was an accidental result of his tendency to get erections while sleeping. And he refuted the allegations that he played pornography for R.E. by claiming that an R-rated movie accidentally started

16

playing. Thus, a material issue at the trial was whether, if the alleged acts occurred, Smith had any sexual intent in performing them.

{¶ 45} Evidence of a defendant's other acts may be admissible to negate his claim of accident or mistake with respect to the crime for which the defendant is on trial. *Hartman*, __ Ohio St.3d __, 2020-Ohio-4440, ___ N.E.3d ___, at ¶ 52. Such evidence demonstrates, " 'by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.' " *Id.*, quoting McCormick, *Evidence*, Section 190, at 804 (4th Ed.1994). Thus, absence-of-mistake evidence is often closely linked to intent; to be probative of intent, such evidence must be sufficiently similar to the crime charged. *See id.* at ¶ 53. The logical theory on which such evidence is premised is that when circumstances arise often enough, it becomes substantially less likely that they have arisen by chance. *See id.* at ¶ 53, 56; *State v. Evers*, 139 Wis.2d 424, 437, 407 N.W.2d 256 (1987), quoting 2 Weinstein & Berger, *Weinstein's Evidence*, Section 404[12], at 404-84 to 404-87 (1985) (" 'the oftener a like act has been done, the less probable it is that it could have been done innocently' " [emphasis deleted]).

{¶ 46} *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), involved similar facts to the present case. In that case, the defendant admitted that he had touched his daughter's buttock while giving her a backrub, but he denied that he did so for the purpose of sexual gratification. *Id.* at 61. We held that on the limited issue of the defendant's intent, testimony from an older daughter that her father's backrubs were a pretext for sexual fondling was relevant to show that the defendant had touched his younger daughter for the purpose of sexual gratification. *Id.*

{¶ 47} Likewise, Smith admitted to rubbing baby oil on R.E.'s chest, but he denied having any sexual intent in doing so. L.S. and V.M. testified that Smith had touched V.M.'s chest as a child and achieved sexual gratification from it. The evidence was admissible to show not that Smith has a propensity to molest young girls, but rather that when he touched his granddaughter, he did so with a sexual

intent. The permissible inference is that such contact is sexually gratifying to him, even if it would not be to the average person.

{¶ 48} Smith also denied showing pornography to R.E., claiming instead that he had accidentally played an R-rated movie depicting a woman's breasts. V.M.'s and L.S.'s testimony addressed Smith's use of pornography during his abuse of V.M. and tended to refute Smith's innocent explanation for why R.E. might have claimed she had seen pornography.

{¶ 49} In sum, the detailed facts of Smith's molestation of both his daughter and granddaughter—his relationship to the victims, the manner in which he touched them, the location and environment in which the abuse occurred, and his priming of the children by showing them pornography depicting oral sex—were so similar as to " 'strongly suggest that an innocent explanation is implausible.' " *Hartman*, __ Ohio St.3d __, 2020-Ohio-4440, ___ N.E.3d ___, at ¶ 58, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 7.5.2 (2d Ed.2019). Because Smith placed his intent at issue by claiming that his actions were accidental and not done with sexual intent, the evidence was properly admissible to show absence of mistake—or to put it another way, that he committed the acts not accidentally, but with the intent of sexual gratification.

{¶ 50} Even when other-acts evidence is probative of a permissible nonpropensity purpose, a court must still weigh its probative value against the dangers of unfair prejudice and jury confusion. Evid.R. 403(A). We review a trial court's Evid.R. 403(A) decision for an abuse of discretion. *Hartman* at ¶ 30. Here, the jury was informed that Smith had been acquitted of the prior allegations, and it was free to believe or disbelieve the testimony of V.M. and L.M. "As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases." (Emphasis sic.) *Id.* at ¶ 31. Given the highly probative nature of the other-acts evidence in this case, we cannot say that the

evidence was unduly prejudicial or the trial court's decision to admit the evidence was unreasonable.

{¶ 51} Finally, we note that the trial court's instruction to the jury was overly broad, in that it listed multiple purposes for which the evidence could be considered that were not relevant to this case. As explained in *Hartman*, going forward courts should tailor their instructions to the particular uses that are relevant to the case and explain to jurors in plain language the permissible and impermissible inferences that may be drawn from the other-acts evidence. *Id.* at ¶ 70. But defense counsel did not object to the language used by the court, and the instruction largely tracked the model one in the *Ohio Jury Instructions*, *see Hartman* at ¶ 70-72, so we conclude that the court's instruction did not amount to plain error.

## V. Conclusion

{¶ 52} The Double Jeopardy Clause of the Ohio Constitution does not impose a per se bar to the use of other-acts evidence for which the defendant was previously acquitted. Nevertheless, such evidence should be evaluated rigorously, applying Evid.R. 401, 403, and 404(B). On the facts of this case, we conclude that because Smith placed his intent at issue by claiming that his actions were accidental and not done with sexual intent, the trial court properly admitted evidence of the prior sexual-assault allegations. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Krista M. Gieske, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General.

Timothy Young, Ohio Public Defender, and Katherine R. Ross-Kinzie, Assistant Public Defender, urging reversal for amicus curiae Office of the Ohio Public Defender.

_____