[Cite as *State v. Diaz*, 2024-Ohio-3427.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-23-032

    Appellee                                    Trial Court No. 2022CR0407

v.

Kenton Trayvon Diaz                    **DECISION AND JUDGMENT**

    Appellant                                    Decided:  September 6, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant, Kenton Diaz, appeals the judgment of the Wood County Court of

Common Pleas, following a jury trial, convicting him of one count of rape.  Diaz argues

that the trial court erred when it allowed the victim to testify that she reported the rape

only after she saw Diaz's name on a sex offender website.  For the reasons that follow,

we reverse.

## I. Factual Background and Procedural History

{¶ 2} On January 27, 2022, Diaz met A.D. at a bar in Bowling Green, Ohio. After they left the bar, Diaz and A.D. began messaging each other on the social media platform Snapchat, culminating in A.D. inviting Diaz to her apartment. In the early morning hours of January 28, 2022, the two engaged in what began as consensual sexual activity. A.D. alleged, however, that during the encounter Diaz anally penetrated her without her consent and in defiance of her repeated refusal to engage in such activity. A.D. did not immediately report the alleged rape. Rather, she reported the alleged rape eight days later after she found Diaz on a sex offender website.

{¶ 3} On October 6, 2022, the Wood County Grand Jury indicted Diaz on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. During pretrial proceedings, the State provided notice of intent to use Evid.R. 404(B) evidence in the form of two prior incidents where Diaz forced anal sex on his victims. Diaz filed a motion in limine to prevent the State from using this evidence. Following a hearing, the trial court granted Diaz's motion and prohibited the State from introducing evidence of the two prior incidents.

{¶ 4} Diaz then filed a second motion in limine to prevent the State from using statements made to the police by his girlfriend, C.M. The trial court denied Diaz's second motion in limine.

{¶ 5} Approximately one month before trial, Diaz filed a motion requesting a pretrial ruling on the scope of cross-examination of A.D. Diaz sought "to ask A.D. about

2.

the reporting delay without inviting evidence of his prior conviction and registration. He only intends that AD acknowledged (sic) the delay. He does not intend to explore why she delayed, or why she finally reported. Mr. Diaz contends this limited inquiry is not sufficient to invite evidence of his prior conviction."

{¶ 6} The State opposed Diaz's motion on the scope of cross-examination. It argued that if Diaz opened the door regarding the timing of A.D.'s disclosure, then it should be permitted to question A.D. as to her motivation. The State suggested that the trial court could provide a limiting instruction if necessary.

{¶ 7} After hearing oral arguments from the parties, the trial court denied Diaz's motion on the scope of cross-examination. The trial court held that it would not "preclude the State from offering evidence to explain why AD decided to report the alleged offense to law enforcement after an eight-day delay." It recognized that the pivotal issue was consent, and "[t]he fact that AD saw Defendant on a sex offender website and decided to report the alleged incident after an eight-day delay is relevant to show AD's motivation." The court also noted that Diaz "may cross-examine AD regarding her motivation in this matter and the validity of the website viewed by AD." The State, however, would not be permitted to introduce Diaz's underlying conviction that caused him to register as a sex offender, nor would it be permitted to introduce evidence to show that Diaz is, in fact, a registered sex offender. Additionally, if requested by Diaz, the trial court planned to instruct the jury that, "If you find AD's testimony about seeing Defendant on a sex offender website credible, you can consider

3.

such testimony for the sole purpose of what motivation it had on AD to report the incident to law enforcement. You cannot consider such testimony for any other purpose."

{¶ 8} The jury trial began on May 10, 2023. Prior to the first witness being called, Diaz clarified that the State could elicit testimony from AD on direct examination that she reported the alleged rape after she saw Diaz's name on a sex offender website. The trial court confirmed Diaz's understanding of its ruling, at which point Diaz objected to the State being able to elicit such testimony without the defense first raising the issue. Diaz indicated that he would raise his objection again during A.D.'s testimony.

{¶ 9} A.D. then testified as the State's first witness. She testified that on January 27, 2022, she and her friend, M.G., met Diaz at a bar in Bowling Green, Ohio. After a little conversation, Diaz and A.D. exchanged their Snapchat account information. A.D. left the bar and returned to her apartment around 1:30 a.m. on January 28. Within a few minutes of returning home, she began messaging Diaz on Snapchat and eventually invited him to her apartment. During their conversation, Diaz asked about anal sex and A.D. responded with a "very firm no."

{¶ 10} When Diaz arrived at her apartment they spent some time in the living room. Diaz again asked twice about anal sex, and A.D. again in no uncertain terms told him that she was not interested and that he was making her uncomfortable. The two then began kissing and Diaz eventually went to A.D.'s bedroom. A.D. followed about 10 seconds behind, anticipating that they were going to engage in consensual sexual activity.

4.

{¶ 11} When A.D. entered the bedroom, Diaz was already sitting on the bed with his pants pulled down. A.D. sat next to him. Diaz then pulled her head down to have her perform oral sex. A.D. testified that it was so fast and deep that she vomited in Diaz's lap. Diaz again pushed her head down to perform oral sex and she vomited a second time. Diaz then turned A.D. onto her stomach on the bed and began having what she described as consensual vaginal sex. She testified, however, that everything was going so fast and her mind was trying to catch up to what was happening.

{¶ 12} After about 30 seconds of vaginal intercourse, Diaz anally penetrated A.D. with his penis. She told him no. According to her, Diaz laughed and resumed vaginal sex. After less than 20 seconds, Diaz again anally penetrated A.D. She told him no, but he pressed his hand down on her back and told her "This is the hard part, you'll be fine in a second." A.D. testified that the anal sexual conduct was very painful and caused bleeding from her rectum. After less than a minute, Diaz stopped and stated that he had to go to the bathroom. When he returned, A.D. told him to leave, which he did.

{¶ 13} Immediately following the incident, A.D. messaged her roommate C.J., begging for her to be awake. A.D. then knocked on C.J.'s bedroom door and told her what happened. A.D. did not consider going to the hospital or reporting the incident to the police because she was embarrassed and did not want to confront her feelings of being physically and personally violated. The next morning, A.D. told her friend M.G., who encouraged her to report it to the police. A.D. testified that she did not want to report it as she was still trying to understand what she was feeling. She also testified that

5.

she did not want to have a sexual assault kit completed because she did not want to have that area violated any more than it already was. As of January 28, 2022, A.D. had no plan to ever report the incident.

{¶ 14} Eight days later, on February 5, 2022, A.D. reported the alleged rape to the Bowling Green Police Department. The State asked A.D. what changed between January 28 and February 5. Over Diaz's objection, A.D. testified that she saw him on a sex offender website. The court then instructed the jury that "If you find that [A.D.'s] testimony about seeing the defendant on a sex offender website is credible, you may consider such testimony for the sole purpose of what motivated her to report the incident to law enforcement. You cannot consider such testimony for any other purpose." A.D. was then asked why seeing Diaz on that website motivated her to report the incident, to which she replied, "Because I didn't want what happened to me to happen to anybody else."

{¶ 15} The State next called C.J., who testified that A.D. came to her room and told her that she had been raped by Diaz. C.J. described that A.D. was timid, teary -eyed, and not very talkative, which was unlike A.D.'s usual personality and which was different from how she had been behaving earlier in the evening.

{¶ 16} M.G. then testified that she received a text message from A.D. at 9:00 a.m. on January 28, 2022. She went to A.D.'s apartment that afternoon and noticed A.D. to be "a little skittish, a little off." M.G. also noticed that A.D.'s sheets had been taken off the bed and A.D. said that she had washed them.

6.

{¶ 17} The State also called Diaz's girlfriend, C.M., as a witness. The State asked her if she told the detective that Diaz was either with her or at work at the time of the incident, and if she had spoken with Diaz before speaking with the detective. C.M. invoked her right to remain silent for both questions.

{¶ 18} As its last witness, the State called Detective Sergeant Doug Hartman of the Bowling Green Police Department. Hartman interviewed Diaz about the rape allegations, and audio from the interview was played for the jury. In the recording, Diaz denied any knowledge about an encounter with a girl. Hartman then showed him a picture of A.D., and he denied recognizing her.

{¶ 19} Hartman next contacted C.M. by phone. He testified that she sounded excited, "almost like hysterical." She told Hartman that Diaz could not have been responsible because he was always either with her or at work. Hartman later followed up with Diaz's workplace and learned that he was not working at the time of the alleged incident.

{¶ 20} Finally, Hartman testified that, based on his training and experience, sexual assault victims do not always report the assaults immediately, oftentimes because the victims are embarrassed, ashamed, or afraid that they will not be believed.

{¶ 21} Following the presentation of evidence, closing arguments, and instructions, the jury returned with a verdict of guilty on the sole count of rape. At sentencing, the trial court classified Diaz as a Tier III sex offender and ordered him to

7.

serve an indefinite prison term of a mandatory minimum nine years up to a maximum of thirteen and one-half years.

## II. Assignments of Error

{¶ 22} Diaz timely appeals from his judgment of conviction, asserting two assignments of error for review:

1. The trial court erred as a matter of law when it permitted testimony that the alleged victim in this matter saw Mr. Diaz on a sex offender website.

2. The trial court abused its discretion when it found that the testimony regarding the sex offender website was admissible under Evid.R. 403.

## III. Analysis

{¶ 23} Diaz's assignments of error both challenge the admissibility of "other acts" evidence, namely that A.D. only reported the rape after she saw Diaz's name on a sex offender website.

{¶ 24} Under Evid.R. 404(B)(1), "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It may be, however, "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to

8.

commit certain acts." *State v. Kamer*, 2022-Ohio-2070, ¶ 129 (6th Dist.), quoting *State v. Hartman*, 2020-Ohio-4440, ¶ 22.

{¶ 25} In determining whether other acts evidence is admissible, a trial court must apply a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*State v. Knuff*, 2024-Ohio-902, ¶ 116, quoting *State v. Williams*, 2012-Ohio-5695, ¶ 19-20.

{¶ 26} Diaz's first assignment of error address the first and second steps of the analysis and his second assignment of error addresses the third step.

## A. A.D.'s Testimony is Relevant Under Evid.R. 401 and 404(B)

{¶ 27} In his first assignment of error, Diaz contends that A.D's testimony that she saw Diaz on a sex offender website was not relevant to the issue of whether the sexual conduct was consensual. Further, he argues that the testimony was not relevant to explain the delay in reporting the encounter to law enforcement because he never made delay an issue at trial. The State, on the other hand, argues that the evidence was relevant to explain A.D.'s motivation to report the incident.

9.

**{¶ 28}** Evid.R. 401 provides that "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *State v. Smith*, 2020-Ohio-4441, ¶ 37. "Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case." *Id.* at ¶ 38. "The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law that we review de novo." *Kamer* at ¶ 132, citing *State v. Worley*, 2021-Ohio-2207, ¶ 117; *Hartman*, 2020-Ohio-4440, at ¶ 22.

**{¶ 29}** Upon review, the central evidence in this case to prove that Diaz committed rape is the testimony of A.D. Thus, her credibility is of paramount importance. Although not emphasized by Diaz to that point in the trial, A.D.'s delay in reporting the alleged rape has some bearing on her credibility. To explain that delay, A.D. testified that she changed her mind and reported Diaz after she saw him on a sex offender website. Thus, this testimony was offered for the non-character-based purpose of proving her motivation to report the alleged rape after initially not reporting it, which provides insight into whether she was telling the truth when she claimed that the anal sex was not consensual.

**{¶ 30}** Accordingly, A.D.'s testimony was relevant for a permissible purpose under Evid.R. 401 and 404(B). Diaz's first assignment of error is not well-taken.

**B. The Danger of Unfair Prejudice Substantially Outweighed the Probative Value of A.D.'s Testimony**

{¶ 31} In his second assignment of error, Diaz argues that the trial court abused its discretion when it found that the danger of unfair prejudice resulting from A.D.'s testimony that she saw him on a sex offender website did not substantially outweigh its probative value.

{¶ 32} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "[T]he trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice to the defendant pursuant to Evid.R. 403(A) involves an exercise of judgment and will be reviewed for an abuse of discretion." *Worley* at ¶ 117, citing *Hartman* at ¶ 30. Abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 33} "Generally speaking, '[i]f the fact that the proponent seeks to prove by way of other acts is not genuinely disputed or material to the case, then it has little probative value and the risk of prejudice is high. As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases.'" (Emphasis sic.). *Kamer*, 2022-Ohio-2070, at ¶ 131, quoting *Hartman* at ¶ 31.

{¶ 34} On the probative value side of the equation, this case is unique in that the evidence in question was not admitted for any of the listed purposes in Evid.R.

11.

404(B)(2). Its aim was not to define any quality or status of Diaz such as his "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Instead, the evidence was only tangentially related to the crime because it was only offered to explain A.D.'s motivation to report the alleged rape, and her motivation to report was only relevant to explain the eight-day delay, but Diaz had not made that delay an issue in the case.

{¶ 35} Notably, the State contends that Diaz did make the delay an issue by filing his pretrial motion regarding the scope of cross-examination. However, what is argued in pretrial proceedings is not necessarily in dispute at the trial. Having lost his pretrial motion, Diaz did not pursue any consideration of A.D.'s delay in reporting in his opening statement to the jury. Had he done so, he arguably could have opened the door for the State to provide an explanation. But because he did not, at the time the State elicited A.D.'s testimony, it was simply a preemptive answer to a question that Diaz had not asked.

{¶ 36} Thus, A.D.'s testimony that she saw Diaz on a sex offender website was of little probative value to facts that were genuinely disputed or material to the case.

{¶ 37} Turning to the risk of prejudice side of the equation, the Ohio Supreme Court has recognized that "[t]he existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict

12.

based on past misconduct rather than restrict their attention to the offense at hand." *State v. Allen*, 29 Ohio St.3d 53, 55 (1987).

{¶ 38} Here, the revelation that Diaz was on a sex offender website was highly inflammatory, particularly because he was on trial for a sex-related offense. In a case involving some consensual sexual activity and some allegedly non-consensual sexual activity, the knowledge that Diaz was a sex offender invited the jury to convict him based on his propensity to commit sex offenses, which is precisely what the rules on other-acts evidence seek to prohibit.

{¶ 39} To lessen the prejudicial impact, the trial court in this case provided a limiting instruction to the jury. It is well-established that "[a] jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995); *State v. Dolman*, 2010-Ohio-5505, ¶ 23 (6th Dist.) ("Juries are presumed to follow and obey the trial court's limiting instructions."). However, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. U.S.*, 391 U.S. 123, 135 (1968). The question in this case, then, is "whether the instruction to the jury was enough to cure the error to the point that it was no longer prejudicial." *State v. Ferrell*, 2004-Ohio-803, ¶ 21 (7th Dist.).

{¶ 40} While rare, instances exist where the risk of unfair prejudice is so substantial that a limiting instruction is insufficient. In *Allen*, for example, the Ohio

13.

Supreme Court held that in a trial for operating a motor vehicle while under the influence of alcohol, information that the defendant had two prior convictions for the same offense was so prejudicial that the trial court's limiting instruction was not sufficient to cure the error. *Allen* at 55; *see also Ferrell* at ¶ 23 (limiting instruction inadequate to remedy effect of improper disclosure of the defendant's previous conviction for driving under the influence).

{¶ 41} Likewise, in *State v. Davis*, 2010-Ohio-4383 (6th Dist.), this court held that the trial court abused its discretion in failing to award a mistrial in a trial for tampering with evidence pertaining to drugs. In that case, the officer testified "I could clearly tell that Mr. Davis was a passenger in that vehicle along with Jon Saxton. I have dealt with those two in the past. I have had some problems with those two in the past as far as narcotics complaints and everything else." *Id.* at ¶ 51. The trial court immediately sustained an objection to the testimony and instructed the jury to disregard it. *Id.* at ¶ 72. Nonetheless, recognizing that the case did not involve "overwhelming evidence of guilt," this court held that "the injection of the inflammatory testimony . . . prevented appellant from receiving a fair trial on the tampering with evidence charge." *Id.* at ¶ 79.

{¶ 42} This case is similar in that, like *Allen* and *Davis*, the information presented in the rape trial that Diaz was on a sex offender registry was so prejudicial that the trial court's limiting instruction was not sufficient to cure the error.[1]

---

[1] The State argues in its brief that Diaz invited the error by requesting a limiting instruction. This argument, however, is misplaced. Diaz does not contend that the trial court erred in providing a limiting instruction, rather, he contends that it erred in

14.

**{¶ 43}** In sum, upon consideration of the limited probative value of the testimony and its high risk of unfair prejudice, it was unreasonable to permit A.D. to testify that she saw Diaz on a sex offender website. Therefore, we hold that the trial court abused its discretion when it allowed A.D.'s testimony over Diaz's objection.

## C. The Error was not Harmless

**{¶ 44}** The remaining question is whether this error was harmless. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "Under Crim.R. 52, in order to prejudice a defendant's substantial rights, the error 'must have affected the outcome of the [trial] court proceedings.'" *State v. Boaston*, 2020-Ohio-1061, ¶ 62, quoting *State v. Fisher*, 2003-Ohio-2761, ¶ 7. To determine whether the erroneous admission of certain evidence affected the defendant's substantial rights so as to require a new trial or whether the admission of that evidence was harmless error under Crim.R. 52(A), the Ohio Supreme Court set out a three-part analysis:

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. . . Second, it must be determined whether the error was not harmless beyond a reasonable doubt. . . Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

permitting A.D.'s testimony over his objection. Thus, the doctrine of invited error does not apply. His request for a limiting instruction was simply a reasonable, yet ultimately inadequate, attempt to limit the fallout from the admission of unfairly prejudicial testimony.

15.

(Internal citations omitted.) *Id.* at ¶ 63, quoting *State v. Harris*, 2015-Ohio-166, ¶ 37; *State v. Morris*, 2014-Ohio-5052. "[C]ases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986), quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166, fn. 5 (1983).

{¶ 45} Upon review, the error in this case was not harmless. As discussed above, A.D.'s testimony that she saw Diaz on a sex offender website is highly prejudicial. Further, the evidence of guilt is not overwhelming. While A.D.'s testimony is compelling, at its core this case rests on her credibility; there is no other eyewitness testimony, forensic evidence, or confession to support Diaz's guilt. Thus, we cannot say beyond a reasonable doubt that the jury would have convicted Diaz had they not heard that he was on a sex offender website. *See State v. Sargent*, 2015-Ohio-704, ¶ 35 (6th Dist.) (improper admission of prior instance of strangulation was not harmless beyond a reasonable doubt where the case hinged on the credibility of one witness).

{¶ 46} Accordingly, because the trial court abused its discretion when it allowed the other-acts evidence, and because that error was not harmless beyond a reasonable doubt, Diaz's second assignment of error is well-taken and a new trial is warranted.

## IV. Conclusion

{¶ 47} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is reversed and Diaz's conviction is vacated. The matter is remanded to

16.

the trial court for further proceedings consistent with this decision.  Costs of this appeal are assessed to the State pursuant to App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                           _____
JUDGE

Myron C. Duhart, J.
CONCUR.

                                                   _____
JUDGE

Christine E. Mayle, J.
CONCURS AND WRITES
SEPARATELY.                           **_____**
JUDGE

**MAYLE, J.**

{¶ 48} I concur in the majority judgment, but I write separately for three reasons: (1) I disagree that evidence of the victim's motivation for reporting the rape was relevant under the facts of this case; (2) the majority's analysis of the effect of the court's limiting instruction is misguided because it conflates the concept of "limiting" versus "curative" jury instructions; and (3) when analyzing the prejudicial impact of the improper evidence, the majority fails to mention the prosecutor's rebuttal closing statement, which exploited the trial court's error by highlighting the improper evidence for the jury shortly before it deliberated, making it likely that this evidence contributed to Diaz's conviction.

17.

## A. Relevance

{¶ 49} The majority finds that the evidence challenged here was relevant because it "was offered for the non-character-based purpose of proving her motivation to report the alleged rape after initially not reporting it, which provides insight into whether she was telling the truth when she claimed that the anal sex was not consensual." Unquestionably, in some circumstances, a victim's explanation for a delay in reporting a sexual assault *may* be relevant in assessing credibility. *See, e.g., State v. Willard*, 2006-Ohio-5071, ¶ 31 (9th Dist.) (finding that evidence that victim was harassed and beaten in retaliation after reporting rape was relevant, particularly given that cross-examination of the victim focused on her delay in reporting the rape); *State v. Ndubueze,* 2024-Ohio-1415, ¶ 5 (12th Dist. ) (noting that defense counsel had commented that delay in reporting was "very relevant," and was, in fact, his "entire case"). But I would find that it was not relevant in this case because Diaz's attorney ultimately decided—and communicated to the court and the State—that he would not use the victim's delay in disclosing the alleged rape to attack her credibility.

{¶ 50} Here, Diaz sought a pretrial ruling permitting him to raise the delay in reporting without, in turn, allowing the state to introduce evidence that the victim decided to report the rape only after seeing his name on a sex offender website. The State opposed this strategy by the defense, insisting that "[i]f Defense counsel as a trial strategy desires to question [the victim] or law enforcement officers regarding the delayed disclosure, [the victim] must be able to respond truthfully as to what motivated her to

18.

report the matter to law enforcement." It urged at the hearing on the motion that "[d]efense counsel has a choice as to whether they want to go down this line of questioning with the victim. They don't have to do that. If the defense chooses to do that, they would then invite the State, through the victim, to respond in that matter."

{¶ 51} In essence, the State acknowledged that the challenged evidence would become relevant *if* the defense opened the door to it by first raising the issue on cross-examination. But the court went beyond just determining that Diaz would open the door to this evidence—it ruled that the State could introduce the issue *on its own* without waiting to see whether Diaz raised the issue at trial. At trial, Diaz objected on the record. Defense counsel argued that the delay in reporting would need "to be brought up by the defense first before it becomes relevant." It explained that he "did not intend to question [the victim] about the delay in the disclosure . . . [a]nd we feel that we would have had to do that in order to open the door for this sort of testimony. . . ." I agree with Diaz that until and unless the defense raised the delay, the victim's motivation for eventually reporting the rape was not relevant. To the extent that the majority concludes otherwise, I disagree.

{¶ 52} In *State v. Clark,* 1997 WL 117196 (5th Dist. Feb. 3, 1997)—cited by the State—the trial court forewarned defense counsel that if during cross-examination he raised the issue of the victim's two-year delay in reporting alleged sexual abuse, this would open the door for the State to elicit testimony as to why she ultimately decided to disclose the abuse—i.e., she learned that the defendant had also abused her cousin.

19.

Despite this warning, the defense cross-examined the victim about the delay, and on redirect, the State elicited testimony from the victim concerning the reason for the delay. The appellate court agreed with the trial court that the defense opened the door to this testimony and found no error in the trial court permitting the victim to testify regarding her motivation for disclosing the abuse.

{¶ 53} Likewise, in *State v. Harris*, 2023-Ohio-3994, ¶ 98-99 (10th Dist.), the defendant argued that his attorney was ineffective for failing to object when the victim testified that she did not feel that she could leave her home "[b]ecause previous times [the defendant] said he was going to kill [her]. . . ." The defendant maintained that trial counsel should have objected because the "previous times" reference could be construed as suggesting that he had assaulted her before. The appellate court concluded that counsel was not ineffective for failing to object to this evidence because "it [was] clear that part of the defense's trial strategy was to undermine the veracity of [the victim's] allegations by emphasizing her delay in reporting the incident." *Id.* at ¶ 99. It found that the evidence complained of was relevant to explaining the delay.

{¶ 54} In both *Clark* and *Harris,* the defendants' trial strategy dictated the relevance of the victims' delay in reporting the alleged offenses. That should have been the case here as well. Until and unless Diaz highlighted the delay as a reason the jury should find the victim's allegations less credible, this evidence did not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

20.

## B. Instructions

{¶ 55} The majority holds that testimony that Diaz was on the sex offender registry "was so prejudicial that the trial court's limiting instruction was not sufficient to cure the error." The majority's analysis of the sufficiency of the court's limiting instruction is misguided because it conflates the concept of "limiting" versus "curative" jury instructions.

{¶ 56} Under Evid.R. 105, "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." This is known as a limiting instruction. The purpose of a limiting instruction is to guard against the jury's improper use of the evidence. *State v. Randle,* 69 Ohio App.2d 71, 74 (10th Dist.1980). Curative instructions," on the other hand, "are given as a means of remedying errors or irregularities that occur during trial." *State v. Green,* 2020-Ohio-5206, ¶ 86 (2d Dist.), citing *State v. Artis*, 2019-Ohio-2070, ¶ 50 (3d Dist.). Generally, a curative instruction is given to ensure that the jury ignores or disregards evidence or information that it may not properly consider. *See, e.g., State v. Wright*, 2018-Ohio-668, ¶ 17 (6th Dist.).

{¶ 57} Limiting instructions are not designed to "cure" errors. *State v. Kamer*, 2022-Ohio-2070, ¶ 149 (6th Dist.). "Rather, they are designed to mitigate the prejudicial effect of evidence that is, presumably, *otherwise admissible* . . . by explaining to the jury that it may consider the evidence or testimony for certain allowable, limited purposes

21.

only." *Id.* Here, because I would find that the challenged evidence was not relevant, my position is that there was no allowable purpose for which it could be considered. As such, an instruction limiting the jury's consideration of that evidence "for the sole purpose of what motivated her to report the incident to law enforcement" and not "for any other purpose" could not have "cured" the prejudicial impact of evidence that should not have been considered by the jury for *any* purpose at all.

### C. The State's Rebuttal Closing Statement

{¶ 58} Finally, I agree that the judgment here must be reversed because we simply cannot say—beyond a reasonable doubt—that there is no reasonable possibility that this evidence contributed to Diaz's conviction. *State v. Alley*, 2016-Ohio-5735, ¶ 38 (6th Dist.), quoting *State v. McKelton,* 2016-Ohio-5735, ¶ 192 (stating that an "error could only be construed as harmless where there is 'no reasonable possibility that the improperly admitted evidence contributed to the conviction[.]'") Indeed, in this case, I believe that we can say that it is *more than* reasonably possible—it is probable—that the improper evidence contributed to Diaz's conviction given the prosecutor's comments during rebuttal closing argument. As the Ohio Supreme Court has recognized, "[t]he actions of a prosecutor may combine with an evidentiary error to cause greater impact[,]" and result in "blatant prejudice" that can "override even a strong case and require a new trial." *State v. Morris*, 2014-Ohio-5052, ¶ 31-32; *see also State v. Alliman*, 2023-Ohio-2617, ¶ 28 (6th Dist.) ("the state's action in emphasizing improper testimony for the jury may make it more likely that the defendant was prejudiced by its admission.").

22.

**{¶ 59}** Here, the state concluded its rebuttal closing statement by telling the jury—shortly before it retired to deliberate—the following:

> And as we talk about motive, her motive for reporting this event, you heard the testimony, she did not intend to report this, it was not her intent to go forward. What changed? You heard testimony to what changed. She saw the defendant on the sex offender website and that motivated her to report this.

**{¶ 60}** Undoubtedly, the prosecutor's rebuttal comments were designed to ensure that Diaz's status as a sex offender was top-of-mind for the jury as it began deliberations. Under these circumstances, it is not a stretch to conclude that it was likely that this improper evidence contributed to Diaz's conviction.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.