[Cite as *State v. Lewis*, 2021-Ohio-1575.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29696 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TYREE LEWIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 19 03 1038 |

DECISION AND JOURNAL ENTRY

Dated: May 5, 2021

TEODOSIO, Judge.

{¶1} Appellant, Tyree Lewis, appeals from his conviction for unlawful sexual conduct with a minor in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The victim's mother ("Y.F.") was in an on-and-off relationship with Mr. Lewis through the years. The victim ("K.F.") is Y.F.'s daughter, who by all accounts was a troubled teenager residing at different homes during different stretches of time, including Y.F.'s home, her grandmother's home, and then her father's home in Arizona. K.F. is 22 years younger than Mr. Lewis and would sometimes babysit for him while he was at work. According to Y.F., she suspected Mr. Lewis was talking to other women, so she went through his cell phone. She discovered various messages to other women, but also found some inappropriate and flirtatious messages between K.F. and Mr. Lewis. Y.F. then used the phone to send more messages to K.F., all while pretending to be Mr. Lewis. She soon learned that K.F. had performed fellatio on Mr.

Lewis once when she was 15 years old.  According to both K.F.'s grandmother ("E.M.") and Y.F., when confronted on the following day Mr. Lewis admitted to both women that K.F. had performed fellatio on him.  Y.F. eventually called the police to her home days later, but since K.F. was now living in Arizona and was not in harm's way, they did not arrest Mr. Lewis on that day.  While a police investigation was pending, Y.F. learned more details from K.F., including that she had given Mr. Lewis "hand jobs" on two separate occasions prior to the fellatio incident.

{¶3}  Y.F. then met up with Mr. Lewis in his parked vehicle in the Stow Walmart parking lot and hid a cell phone in her wig to record their conversation.  In the audio recording, which was later played for the jury and admitted into evidence at trial, Y.F. questioned Mr. Lewis about the incident where K.F. was "sucking [his] d**k."  Mr. Lewis was hesitant to say much at first and expressed concerns about Y.F. possibly wearing a wire to set him up.  She convinced him otherwise though, and he eventually admitted to the fellatio incident and to one of the hand job incidents.  He explained: "I never ever asked her to suck my d**k.  To me, that s**t was nasty and gross.  I'm not saying the, the hand job didn't happen.  I'm not saying that that's not gross, but I never ever wanted, wanted that."  He claimed K.F. joined him in his bed one night after he had been out drinking, straddled him, and said, "Tyree, do you want me to put it in my mouth?"  He continued: "Before I had a chance to say no, the next thing I know she was doing it.  I never asked her to do it."  When Y.F. asked why he did not just push a 15-year-old off of him, he explained, "I was a little drunk * * * [I]t was bad judgment.  I could have."  Although he continued to blame K.F. for the incident, Mr. Lewis nonetheless admitted in the recording, "I'm not saying I was right.  I'm wrong.  I know I'm wrong.  I know I'm wrong.  I know I'm wrong."  Y.F. later provided the audio recording to the police.

{¶4} Following their investigation, the police arrested Mr. Lewis for the fellatio incident and charged him with unlawful sexual conduct with a minor, under R.C. 2907.04(A), which prohibits anyone 18 years or older from engaging in sexual conduct[1] with a non-spouse minor between the ages of 13 and 15 years old when the offender either knows the minor's age or is reckless in that regard. Mr. Lewis was convicted of the offense after a jury trial, and the jury found beyond a reasonable doubt that he was at least 10 years older than K.F., which elevated the offense to a felony of the third degree. *See* R.C. 2907.04(B)(3). The trial court sentenced Mr. Lewis to 4 years in prison and classified him as a Tier II sex offender.

{¶5} Mr. Lewis now appeals from his conviction and raises three assignments of error for this Court's review.

II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED THE INTRODUCTION BY THE STATE OF OTHER CRIMES, WRONGS, OR ACTS TO SHOW PROOF OF APPELLANT'S CHARACTER IN VIOLATION OF [EVID.R.] 404(B).

{¶6} In his first assignment of error, Mr. Lewis argues that the trial court erred in admitting other-acts evidence to show proof of his character, in violation of Evid.R. 404(B). We disagree.

{¶7} "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). The admissibility of other-acts evidence is carefully limited

---

[1] "Sexual conduct" includes fellatio. R.C. 2907.01(A).

because of the substantial danger that the jury will convict the defendant solely because it assumes either he has a propensity to commit criminal acts or he deserves punishment regardless of whether he committed the crime charged in the indictment. *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). This danger is particularly high when the other acts are very similar to the charged offense or of an inflammatory nature. *Id.* Evid.R. 404(B) thus provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Compare* R.C. 2945.59.

{¶8} The Supreme Court of Ohio previously set forth a three-part analysis for determining the admissibility of other-acts evidence:

> to be admissible, (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20. More recently though, the high court issued two decisions in *State v. Hartman* and *State v. Smith*, "to help clear up some of the confusion that exists regarding the use of other-acts evidence" and to "provide trial courts with a road map for analyzing the admission of other-acts evidence * * *." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 19. *See also State v. Smith*, ___ Ohio St.3d ___, 2020-Ohio-4441, ¶ 37.

{¶9} Courts are precluded from admitting improper character evidence under Evid.R. 404(B), but have discretion to allow other-acts evidence that is admissible for a permissible purpose. *State v. Graham*, ___ Ohio St.3d ___, 2020-Ohio-6700, ¶ 72, citing *Hartman* at ¶ 22,

citing *Williams* at ¶ 17. Thus, pursuant to *Hartman* and *Smith*, we analyze the admission of other-acts evidence under a mixed standard of review. First, the determination of whether the other-acts evidence was offered for an impermissible purpose under Evid.R. 404(B) is a question of law, which we review de novo. *Hartman* at ¶ 22. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4. Next, if the other-acts evidence was offered for a permissible purpose, the determination of whether to then admit the evidence—after weighing its probative value against its prejudicial effect—is reviewed for an abuse of discretion. *Hartman* at ¶ 30. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402. In other-acts cases, the threshold question for determining admissibility is whether the evidence is relevant—not to the ultimate determination of guilt, but rather *to the particular purpose* for which it is offered. *Hartman* at ¶ 24-26. The evidence must be probative of a purpose other than the person's character or propensity to behave in a certain way. *Id.* at ¶ 26. It is not enough to say that the evidence is relevant to a non-propensity purpose, however, as that purpose must also go to a "material" issue that is actually in dispute. *Id.* at ¶ 27. In other words, "courts should begin by evaluating whether the evidence is relevant to a non-character-

based issue that is material to the case." *Smith* at ¶ 38. Moreover, to guard against juries being presented with every unsubstantiated accusation that, if true, would be "relevant," there must also be a threshold showing that the alleged similar act was committed by the defendant. *Hartman* at ¶ 28.

{¶11} The analysis does not end there though, as Evid.R. 403(A) requires the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Accordingly, once the proponent has established a permissible non-propensity purpose for the admission of other-acts evidence, "the trial court must determine whether the proffered evidence—though admissible under Evid.R. 404(B)—is nevertheless more prejudicial than probative." *Hartman* at ¶ 29. In doing so, the court must first consider the extent to which the other-acts evidence is directed to an issue that is actually in dispute. *Id.* at ¶ 31. Generally, both the probative value and prejudicial effect will depend on the degree to which the fact is actually contested. *Id.* If the fact that the proponent seeks to prove is not genuinely disputed or material to the case, then it has little probative value and the risk of prejudice is high. *Id.* "Courts should also consider whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means and whether the other-acts evidence is probative of an essential element of the crime or an intermediate fact in the case." *Id.* at ¶ 32. When other-acts evidence is only slightly probative of a non-propensity theory but has a high likelihood of unfairly prejudicing the defendant or confusing or misleading the jury, the evidence must be excluded. *Id.* at ¶ 33. Finally, when a court admits other-acts evidence, it should minimize the danger of unfair prejudice by explaining both the specific purpose for which the evidence may be considered and the rationale for its admission on the record. *Id.* at ¶ 34. Courts

can help reduce the risk of confusion and unfair prejudice by issuing an appropriate jury instruction geared toward the specific purpose for which the evidence has been admitted. *Id.*

{¶12} In the case sub judice, defense counsel made an oral motion in limine during a pretrial status conference and argued to exclude any testimony that K.F. gave Mr. Lewis hand jobs on two occasions prior to the fellatio incident. The prosecutor agreed that Mr. Lewis was not charged with receiving hand jobs from K.F., but argued that "they go to explain the progression and how it went from a stepfather-stepdaughter relationship to his penis was in her mouth." The prosecutor claimed the victim was groomed by Mr. Lewis and it was "absolutely necessary and vital for the jury to hear each of those small steps that led to that giant leap." The trial court stated it was "inclined to allow it[,]" but took the matter under advisement. Defense counsel raised the issue again at the outset of trial, and the prosecutor argued that the hand jobs would be offered to show a "continuing course of conduct" and "the process [Mr. Lewis] used to groom [K.F.] * * *." He explained:

> It started with all the classic grooming stuff: The special favors, treatment, allowing to bend the rules, befriending, going kind of past being a parent, more of a friend, and then physical touching. Ultimately, the * * * two hand jobs, and then ultimately a blow job * * * It's quite a jump for the jurors to hear: Well, this stepparent, this man of the house, all of a sudden gets a blow job from this girl. We need to fill them in on the steps.

The trial court ruled to admit the evidence over the objection, noting it was the court's understanding that the evidence was being offered "on the issue of motive, * * * course of conduct, absence of mistake, but primarily on motive to show the increased contact and/or grooming" of the victim.

{¶13} The other-acts evidence was first introduced when Y.F. testified that she learned K.F. had given Mr. Lewis two hand jobs in the past. The trial court immediately interjected and explained to the jury that the "testimony regarding events leading up to the oral sex" was not being

admitted "to show conformity thereof or that he is guilty of this offense[,] but only to demonstrate motive on [his part.]" Defense counsel tried to then note an objection to the other-acts testimony for the record, but the trial court said it was too late and should have been done before the question was asked. The court nonetheless ordered the jury to disregard the evidence and asked the prosecutor to proceed examining the witness. As Y.F.'s testimony resumed, defense counsel twice tried to preemptively object to the other-acts evidence, but her objections were overruled. Y.F. eventually testified again that she learned her daughter had given hand jobs to Mr. Lewis on two prior occasions, but no further objections were made.

{¶14} K.F. also testified about the two hand job incidents. She testified that she was in her sister's bedroom when Mr. Lewis showed up and eventually asked her for a "favor" as he was leaving. He purportedly struggled for several minutes to find the words to ask her something, but eventually took her hand and placed it on the outside of his pants, over his penis. He explained to her, "I was thinking I could, like, pay you to give me a hand job[,]" but K.F. declined the illicit offer. Mr. Lewis then warned her that he would tell her mother about her girlfriend often spending the night in the house, which was against her mother's rules, so K.F. testified that she "complied." Mr. Lewis lay down on the bed, pulled out his penis, and led K.F.'s hand to it. K.F. proceeded to give him a hand job, which she described as "[p]utting [her] hand on his penis and rubbing it until he ejaculate[d]." When K.F. was cleaning up afterward, Mr. Lewis told her he would get her the money later. A few days later, Mr. Lewis apologized to K.F. and said it would not happen again. According to K.F., the second incident occurred at a time when the parents of her girlfriend were getting divorced. Mr. Lewis suggested that K.F. buy her girlfriend some flowers. When K.F. explained that she did not have any money, Mr. Lewis proposed, "Maybe we can set up a situation like last time." According to K.F., Mr. Lewis then grabbed her hand and led it to his penis. She

testified that she complied again because she was afraid of getting in trouble with her mother. Mr. Lewis lay down on his bed, pulled out his penis, and K.F. gave him another hand job until he ejaculated. Finally, she testified that, during what began as a third hand job incident, Mr. Lewis told her, "You should put it in your mouth[,]" which she did.

{¶15} The trial court determined that the other-acts evidence was admissible because it demonstrated Mr. Lewis' motive, course of conduct, and absence of mistake, but only informed the jury that it was being introduced to show motive. "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman* at ¶ 48. Evidence of the two hand jobs did not reveal a specific reason for Mr. Lewis to later engage in fellatio with K.F., however, and thus did not provide evidence of any motive to commit unlawful sexual conduct with a minor beyond that which can be inferred from the commission of the crime itself. *See Hartman* at ¶ 49, citing *State v. Curry*, 43 Ohio St.2d 66, 71 (1975) ("A person commits or attempts to commit statutory rape for the obvious motive of sexual gratification. Since motive cannot be deemed to have been a material issue at appellee's trial, 'other acts' testimony was not admissible to prove this matter."). "[I]n most cases of this type, there is no motive beyond that implicit in the commission of the offense itself." *Hartman* at ¶ 50 (concerning the offense of rape). *See also State v. Sabo*, 5th Dist. Delaware No. 18 CAA 10 0080, 2019-Ohio-3072, ¶ 27-28 (stating the motive and intent of sexual gratification was not a material issue as it was apparent from the charges of gross sexual imposition). Mr. Lewis' motive in receiving fellatio from K.F. was undoubtedly sexual gratification, which was not a material issue in dispute. We therefore disagree with the trial court's determination that the other-acts evidence was admissible for the purpose of establishing motive.

{¶16} Nevertheless, an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because

such an error is not prejudicial. *Cook Family Invests. v. Billings*, 9th Dist. Lorain Nos. 05CA008689 and 05CA008691, 2006-Ohio-764, ¶ 19. Given our de novo standard of review, we determine that the other-acts evidence, while not admissible to show motive, was nonetheless admissible to show absence of mistake or accident. *Compare Smith* at ¶ 43 (concluding that while the trial court was incorrect in its conclusion that the evidence was admissible to show a common scheme or plan, the evidence was admissible to show an absence of mistake.). "Other-acts evidence is admissible to negate a defendant's claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends '[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.'" *Hartman* at ¶ 52, quoting McCormick, *Evidence*, Section 190, at 804 (4th Ed.1994). In the criminal context, there are generally two ways in which the accused may raise a claim of accident; the first involves whether a criminal act occurred at all, and the second implicates the intent of the accused. *Id.* at ¶ 52-53.

{¶17} Here, the defense theory at trial was that no crime occurred. Mr. Lewis' defense was instead that K.F. was both a liar and a manipulator who surreptitiously performed fellatio on him while he was asleep. Mr. Lewis testified in his own defense that K.F. joined him in his bed one night after he arrived home from a night out drinking. According to Mr. Lewis, he was lying on his side and fell asleep while talking to K.F. She then sat on top of him, but he woke up and told her to go to her room. Mr. Lewis then fell back asleep, and the next thing he remembered was feeling K.F. performing fellatio on him for a "split second." He rolled away from her and fell back asleep, while K.F. presumably left his room.

{¶18} Mr. Lewis' defense was not that K.F. merely consented[2] to the fellatio, but rather that she performed it on him without his knowledge while he was asleep, making any role of his in the act completely involuntary. Thus, the other-acts evidence that Mr. Lewis received two hand jobs from K.F. in the past was relevant and admissible not to show his propensity to commit sexual offenses against minors, but to negate his explanation for how his penis wound up in K.F.'s mouth, which was a material issue in dispute. *Compare Hartman* at ¶ 56 (discussing a Montana case where other-acts evidence was permissible not to show a propensity to capture elk but to negate the explanation for how the elk came to be on the defendant's farm). As the Supreme Court explained in *Hartman*, the permissible inference in this situation is that "'the oftener a like act has been done, the less probable it is that it could have been done innocently.'" *Id.*, quoting *State v. Evers*, 139 Wis.2d 424, 437 (1987), quoting 2 Weinstein & Berger, *Weinstein's Evidence*, Section 404[12], at 404-84 to 404-87 (1985).

{¶19} Next, we cannot say that the trial court abused its discretion in deciding that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. *See* Evid.R. 403(A). "'Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence *unfairly* prejudices a defendant.'" (Emphasis added.) *State v. Martin*, 9th Dist. Lorain No. 15CA010888, 2017-Ohio-2794, ¶ 23, quoting *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. "Unfairly prejudicial evidence usually appeals to the jury's emotions, rather than to intellect." *State v.*

---

[2] While it appeared initially from the transcript that consent would play a part in Mr. Lewis' defense, the issue appeared to be abandoned once the trial court cautioned the parties that consent could not be an issue in this case. A child under 16 years old is simply not legally capable of consenting to sexual conduct with an adult, so consent plays no role and is not a viable defense in determining whether a person has violated R.C. 2907.04. *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, ¶ 26.

*Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 112. At the outset of trial, the trial court noted in overruling defense counsel's objection that the other-acts evidence was probative. Although the court did not explicitly state its findings on the record regarding its weighing process and application of Evid.R. 403(A), it was not required to do so. *State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, ¶ 46. Whether Mr. Lewis committed a criminal offense or whether K.F. performed fellatio on him without his knowledge while he was asleep was a disputed issue of paramount importance at trial. The State's witnesses were all subject to cross-examination, and nothing in the record suggests the prosecution could have presented alternative evidence of the hand jobs through less prejudicial means to negate Mr. Lewis' defense in this matter. Moreover, because the trial court explicitly instructed the jury that the evidence was not being admitted "to show conformity thereof" or to show that Mr. Lewis was guilty in the fellatio incident, but only for the limited purpose of demonstrating his motive, the court minimized the risk of any confusion and unfair prejudice. *See Hartman* at ¶ 34. Juries are also presumed to follow the trial court's instructions. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 103. We therefore cannot say that the trial court abused its discretion in admitting the other-acts evidence after weighing its probative value against its prejudicial effect. *See Hartman* at ¶ 30.

{¶20} Mr. Lewis' first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

APPELLANT LEWIS WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TESTIMONY AT TRIAL PRESENTED BY THE STATE OF INTERNET COMMUNICATIONS WITHOUT THE ESTABLISHMENT OF A PROPER FOUNDATION.

{¶21} In his second assignment of error, Mr. Lewis argues that plain error occurred when the proper foundation was not laid for witness testimony regarding electronic messages. We disagree.

{¶22} A trial court's decision to admit or exclude testimony is typically reviewed for an abuse of discretion. *State v. Green*, 9th Dist. Summit No. 29120, 2019-Ohio-4967, ¶ 18. *See also State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."). A party's failure to object to testimony on the basis that it lacked the necessary foundation, however, results in the forfeiture of all but plain error. *State v. Reye*, 9th Dist. Lorain No. 15CA010770, 2016-Ohio-3495, ¶ 11. Mr. Lewis never objected to any testimony on these grounds, so he concedes that he is limited to arguing plain error on appeal.

{¶23} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Even if an appellant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶24} "Before evidence may be admitted, it must be authenticated or identified sufficiently 'to support a finding that the matter in question is what its proponent claims.'" *State v. Hoffmeyer*, 9th Dist. Summit No. 27065, 2014-Ohio-3578, ¶ 18, quoting Evid.R. 901(A). The threshold for admissibility is low, however, and Evid.R. 901(B) provides a nonexhaustive list illustrating the ways in which the proponent of the admission of evidence can conform with

Evid.R. 901(A). *State v. Yuschak*, 9th Dist. Medina No. 15CA0055-M, 2016-Ohio-8507, ¶ 17. For example, the authentication or identification of evidence may be achieved through the testimony of a witness with knowledge that "'a matter is what it is claimed to be.'" *Id.*, quoting Evid.R. 901(B)(1). *See also State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 8, quoting *State v. Howard*, 1st Dist. Hamilton No. C-170453, 2018-Ohio-3692, ¶ 15 ("'All that is required is sufficient evidence from which the trier of fact might conclude that a document is authentic.'"). Generally, in most cases involving electronic print media, i.e., texts, instant messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages. *State v. Roseberry*, 8th Dist. Cuyahoga No. 96166, 2011-Ohio-5921, ¶ 75.

{¶25} Here, Y.F. testified that she discovered inappropriate messages between Mr. Lewis and K.F. when she went through Mr. Lewis' phone. She then used the phone to continue messaging K.F. as if she were Mr. Lewis and soon learned that K.F. had performed fellatio on Mr. Lewis. The State only sought to introduce one printed page of the voluminous Instagram messages between Mr. Lewis and K.F. that were extracted from the phone, but the trial court did not admit it into evidence. No copies of any other electronic messages were introduced and admitted.

{¶26} Mr. Lewis argues that it was plain error for the trial court to permit testimony regarding the messages because copies of the electronic messages were never introduced and admitted at trial. But, assuming without deciding that the trial court erred in permitting this testimony, Mr. Lewis cannot establish plain error because he has not demonstrated that he was unfairly prejudiced as a result of the testimony. *See State v. Knight*, 9th Dist. Wayne No. 15AP0019, 2016-Ohio-8505, ¶ 14. *See also State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459,

¶ 22 (addressing the plain-error standard and stating that "[t]he accused is * * * required to demonstrate a reasonable *probability* that the error resulted in prejudice * * *." (Emphasis sic.)). First, we note that the jury did not have to believe any of the testimony regarding the electronic messages to find Mr. Lewis guilty of unlawful sexual conduct with a minor. The jury only had to find beyond a reasonable doubt that (1) Mr. Lewis engaged in fellatio with K.F. and (2) he either knew K.F. was between 13 and 15 years old or was reckless in that regard. Furthermore, our review of the record reveals that the State introduced overwhelming evidence supporting the jury's guilty verdict in this matter, and Mr. Lewis has not challenged the sufficiency or weight of this evidence on appeal. The State's evidence included: (1) K.F.'s testimony that she performed fellatio on Mr. Lewis; (2) Y.F.'s testimony that Mr. Lewis attended K.F.'s birthday parties and knew her age; (3) testimony that Mr. Lewis admitted the fellatio incident to both Y.F. and E.M.; and (4) an audio recording in which Mr. Lewis admitted that K.F. performed fellatio on him and that he knew it was wrong and could have stopped it but did not. Altogether, this wealth of evidence was more than enough to convict Mr. Lewis of unlawful sexual conduct with a minor, even if the testimony concerning electronic messages had been excluded. Mr. Lewis has therefore failed to demonstrate plain error because he has not demonstrated that the outcome of the trial would have been different had the testimony been excluded. *See Grant* at ¶ 5; *Morgan* at ¶ 36.

{¶27} At the tail end of this assignment of error, Mr. Lewis briefly claims for the first and only time: "Being able to confront your accuser is a Sixth Amendment right as guaranteed by the United States Constitution. Lewis was denied that right in this case." Although Mr. Lewis mentions the Confrontation Clause here, he develops no argument explaining how his right to confront witnesses was violated, e.g., he does not argue that the electronic messages were testimonial in nature or that he was denied the opportunity to cross-examine those who created and

sent the messages. *See State v. Walters*, 9th Dist. Summit No. 28582, 2018-Ohio-1175, ¶ 31, citing *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 24 (noting that where the victims testified at trial no Confrontation Clause violation occurred). *See also* App.R. 16(A)(7). We decline to construct such an argument on his behalf. *See id.*; *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 39.

{¶28} Mr. Lewis' second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHICH DENIED HIM A FAIR TRIAL IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶29} In his third assignment of error, Mr. Lewis argues that his trial counsel was ineffective for failing to object to (1) testimony regarding electronic messages, (2) still photographs taken from body cams videos, and (3) other-acts evidence. We disagree.

{¶30} "The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel." *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 22. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, even debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.

Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶31} Mr. Lewis first argues that trial counsel was ineffective for failing to object to "numerous instances" of testimony concerning electronic messages. Specifically, he notes Y.F.'s testimony that she learned through electronic messaging with K.F. about "some type of sexual interaction, which was oral sex from [K.F.] to [Mr. Lewis]." He also notes different points during Detective Sutton's testimony, in which he testified that: (1) he reviewed the extraction of Mr. Lewis' phone; (2) Y.F. said she had text messages from Mr. Lewis' phone; (3) he confirmed "that" with the information from the phone extraction; (4) he found information on Mr. Lewis' Instagram page that confirmed some of K.F.'s statements, including the amount of money ($150.00) that was to be exchanged between the two; (5) K.F. stated that Mr. Lewis agreed to hold onto the $150.00 for her to avoid suspicion from her mother, with the intent to give it to her when she needed it, which corroborated part of the investigation.

{¶32} "[T]his Court has consistently held that 'trial counsel's failure to make objections falls within the realm of trial tactics and does not establish ineffective assistance of counsel.'" *State v. Bradford*, 9th Dist. Summit No. 22441, 2005-Ohio-5804, ¶ 27, quoting *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 76. In fact, "'[a] competent trial attorney might well eschew objecting * * * in order to minimize jury attention to the damaging material.'" *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 90, quoting *United States v. Payne*, 741 F.2d 887, 891 (7th Cir.1984). As we have already determined, the information within the messages was not necessary for the State to obtain a conviction in this matter, and overwhelming other evidence was

introduced which supported the jury's finding of guilty beyond a reasonable doubt. *See* Discussion of Assignment of Error II, *supra*. Thus, we cannot say that counsel's performance was deficient. Even assuming arguendo that counsel should have objected, Mr. Lewis has not demonstrated any resulting prejudice in light of the overwhelming evidence introduced against him. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 68, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 105 (finding no ineffective assistance of counsel where even if trial counsel objected and evidence was excluded, other evidence established facts giving rise to the defendant's conviction).

{¶33} Next, Mr. Lewis argues that trial counsel was ineffective for not objecting to the introduction of various still photographs captured from the police officers' body cam videos showing Mr. Lewis holding his hands out as if preparing to be handcuffed, and then putting his hands behind his back, again presumably to be handcuffed. He contends that the photos were both prejudicial and cumulative because they indicate an admission of guilt and were taken from videos already viewed by the jury. These photographs indicate at most, however, only that Mr. Lewis assumed he was being taken into police custody, which is a far cry from an admission of guilt to a crime. The jury viewed the body cam footage and heard testimony from those present that day, which provided ample context for the photos and revealed that Mr. Lewis not only did not admit any guilt, but he barely spoke at all and did not answer any police questions. When one of the officers was asked during the viewing of the body cam videos in court what the "hands out, hands behind the back" signified, defense counsel's immediate objection was sustained. While the photos were indeed captured from body cam footage already in evidence, the mere fact that the photos are cumulative of the video footage does not result in prejudicial error, absent a level of gruesomeness or shock value not at issue here. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-

6266, ¶ 232. Any error in the admission of the photos would also amount to harmless error in light of the overwhelming evidence of Mr. Lewis' guilt introduced at trial. *See, e.g., State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 255-256. Once again, we cannot say that counsel's performance was deficient, and Mr. Lewis has not demonstrated any resulting prejudice, as overwhelming other evidence was introduced against him. *See Jackson* at ¶ 68.

{¶34} Finally, Mr. Lewis argues that trial counsel was deficient in failing to renew her motion in limine to exclude the other-acts evidence and in not continuing to object to the other-acts testimony at trial to preserve the argument for appeal. Evid.R. 103(A) provides that "[o]nce the court rules definitely on the record, either before or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." The trial court definitely ruled on defense counsel's objections to the other-acts evidence at the start of trial, so it was not necessary to renew those objections to preserve Mr. Lewis' claim of error for appeal. *See State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 49, citing Evid.R. 103(A). We have also already determined that the trial court did not err in admitting the other-acts evidence of the two hand jobs at trial. *See* Discussion of Assignment of Error I, *supra*. Mr. Lewis therefore cannot demonstrate that counsel was deficient in failing to object to it. *See Piatt* at ¶ 49.

{¶35} Mr. Lewis' third assignment of error is overruled.

III.

{¶36} Mr. Lewis' first, second, and third assignments of error are all overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

NATHAN A. RAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.